CHAROLAIS BREEDING RANCHES, LTD., Plaintiff-Appellant, v. WIEGEL, Defendant-Respondent.

Supreme Court

*No. 77–158. Submitted on briefs October 10, 1979.—Decided December 4, 1979.*
(Also reported in 285 N.W.2d 720.)

For the appellant the cause was submitted on the briefs of *Ellis R. Herbon* of Milwaukee.

For the respondent the cause was submitted on the brief of *Gilbert F. Barnard* of Darlington.

CONNOR T. HANSEN, J.  We deem it necessary to set forth the facts in considerable detail because they are somewhat unusual and the issues relate to whether the trial court abused its discretion in denying the motion of Charolais Breeding Ranches, Ltd. (hereinafter CBR), to reopen or vacate the judgment.

On April 30, 1974, CBR commenced an action against Wiegel seeking a declaratory judgment adjudging that CBR was entitled to the immediate possession of some 276 head of Charolais cattle owned by CBR and in the possession of Wiegel under a "CATTLE CARE CONTRACT," and damages for the wrongful detention of the cattle.  CBR also sought an order requiring Wiegel to immediately return all of such cattle to CBR.  Counsel for CBR was Donald S. Eisenberg & Associates.

The order to show cause was returnable on May 3, 1974, and required Wiegel to show cause as to why he should not be required to immediately deliver possession of all of said cattle to CBR.

A hearing was held on the order to show cause on May 3, 1974, and CBR appeared by the Eisenberg firm and Wiegel appeared in person and by his lawyer, Gilbert F. Barnard. The trial court ordered Wiegel to deliver all of the cattle to CBR and, to protect Wiegel's alleged lien rights, required CBR to furnish and file a surety company bond under which the surety would guarantee and bind itself to pay to Wiegel any and all costs and damages which he might recover from CBR on certain counterclaims to be interposed by him, not exceeding, however, the sum of $44,000.

Pursuant to this order, a bond in the amount of $44,000 was executed by CBR as principal, and by Sentry Indemnity Company as surety on May 7, 1974, and was filed on May 8, 1974. This bond was signed on behalf of CBR by William A. Zietz, as president, and Fred Bleier, as secretary.

On May 20, 1974, Wiegel served his answer and four counterclaims, and filed them on May 23, 1974.

On June 10, 1974, CBR moved to strike all four of Wiegel's counterclaims. The motion was heard on July 1, 1974, and the trial court entered an order denying the motion but permitting Wiegel to serve and file amended counterclaims within 20 days.

On July 16, 1974, Wiegel served four amended counterclaims, and filed them on July 19, 1974.

On August 4, 1974, CBR served a reply to the counterclaims on Wiegel's lawyer, but it appears this reply was never filed.

On October 21, 1974, the United States District Court for the Western District of Wisconsin approved a petition for reorganization of CBR under Chapter X of the Bankruptcy Act, and that court entered an order staying further proceedings in this action pending in the circuit court for Lafayette county, Wisconsin. On the same day James M. Siehr was appointed by the District Court as trustee.

On May 15, 1975, all plans for the reorganization of CBR under Chapter X were disapproved, CBR was adjudicated a bankrupt, and Siehr was appointed trustee in bankruptcy for CBR.

On July 23, 1975, the bankruptcy judge issued an order directing Siehr as trustee in bankruptcy to show cause on July 31, 1975, why an order should not be entered vacating the order staying further proceedings in the action pending before the circuit court for Lafayette county, and directing that the trustee proceed with the prosecution of CBR's cause of action in that court, or in the alternative, why the trustee should not be required to abandon CBR's suit against Wiegel. On July 31, 1975, the bankruptcy judge entered an order vacating the previous order staying proceedings in this action. This order of July 31, 1975, is silent as to whether the trustee should proceed with the prosecution of CBR's action in the Lafayette county circuit court, and is silent as to whether the trustee should be required to abandon CBR's cause of action against Wiegel.

On September 16, 1975, Wiegel served a notice of trial and certificate of readiness on CBR, on Donald S. Eisenberg & Associates as counsel for CBR, and on James M. Siehr, trustee in bankruptcy. This notice and certificate were filed on September 25, 1975.

On December 16, 1975, the trial judge wrote and mailed a letter to Donald S. Eisenberg & Associates as counsel for CBR, Gilbert F. Barnard as lawyer for Wiegel, and James M. Siehr, advising them that a pretrial conference would be held in this action at the courthouse in Darlington on January 9, 1976, at 3 p.m., and that the trial of the action would commence before a jury at Darlington on February 2, 1976, at 10 a.m.

On January 8, 1976 (one day before the pretrial) the trial judge received a telephone call from Siehr in which he stated that he did not intend to attend the pretrial

conference, and that as trustee he did not feel that he had any further interest in the case.

On January 9, 1976, at 3 p.m. the trial judge was present in the circuit court room at the courthouse in Darlington, and at that time Wiegel appeared by his lawyer, Gilbert F. Barnard, and no one appeared on behalf of CBR. After waiting for 20 or 30 minutes the judge instructed Barnard to telephone John Louderman, an associate of the Donald S. Eisenberg & Associates law firm, to ascertain whether someone from that firm was coming to the pretrial conference. Barnard reported to the judge that he was in contact with Louderman by telephone and that no one from his firm planned to attend the pretrial conference. The judge then talked to Louderman on the telephone and he gave the judge no valid reason for failing to attend the pretrial, and further stated he would not withdraw the reply which he had served to the counterclaims. The judge advised him that the case would be tried as scheduled. Louderman advised the judge that he consented to the trial of the case on February 2, 1976, as originally scheduled, and that on behalf of his client he waived trial by jury and would consent to the trial of all issues by the court. Thereafter and on January 12, 1976, the trial judge wrote and mailed a letter to Donald S. Eisenberg & Associates, Gilbert F. Barnard and James M. Siehr advising all of them as follows:

"As agreed by telephone between all counsel and the Court on January 9, 1976, trial by jury is waived in the above action and trial will commence before the Court at Darlington on Monday, February 2, 1976, at 9:30 o'clock a.m. as case number one."

On January 19 or 20, 1976, lawyer Carl F. Schetter of Milwaukee, Wisconsin, telephoned the trial judge and stated that he was representing one Fred Bleier, who

had signed the surety bond as secretary of CBR, and who had also personally signed an indemnification agreement with Sentry Indemnity Company wherein he agreed to indemnify such surety company for any loss it might sustain because of its execution of the bond. Schetter advised the judge that he was going to California from January 22nd through February 6th and requested a continuance. The trial judge told Schetter that his client as an individual was not a party to the action and refused his request for a continuance. On January 22, 1976, the trial judge received a letter from Schetter dated January 21, 1976, in which he stated that the trustee in bankruptcy did not feel that the suit was worth pursuing to judgment, that he (Schetter) had notified lawyer Eisenberg that under no circumstances should he allow default judgment to be entered on Wiegel's counterclaims, and he again requested a continuance. On January 26, 1976, the trial judge wrote to Schetter, Barnard and Eisenberg, and stated that Bleier was not a party to the action nor had he sought intervention. The trial judge further stated that he had no opinion as to whether Bleier could compel intervention if he sought such relief, and that it was up to Schetter to seek intervention if he felt he was entitled to such relief and then seek a continuance if he felt that he had grounds therefor. The trial judge further advised all three recipients of the letter that the trial would proceed as scheduled on February 2, 1976, without a jury, unless prior thereto a continuance was granted on proper motion of some party to the action.

On January 27, 1976, the trial judge received from the Eisenberg firm a copy of a request for substitution of judge in this action which was dated January 26, 1976. On the same day the clerk of the circuit court for Grant county informed the trial judge that she had received in the mail on the same day from the same law firm a document appearing to be the original of such request for

substitution of judge. The trial judge instructed the Grant county clerk of court to mail the purported original request back to Eisenberg so that he could, if he saw fit, file it with the proper clerk. On the same day the trial judge wrote and mailed a letter to Donald S. Eisenberg & Associates and to Gilbert F. Barnard advising them that a copy of a request for substitution had been received, that he had instructed the Grant county clerk to return the original to Eisenberg so that he could file it with the proper clerk, and enclosing to each of them a copy of the trial court's order denying such request for substitution. The trial court's order, filed on January 28, 1976, denied the request because it was not timely and the right to substitution had been waived by counsel for CBR. The original request for substitution was filed on January 29, 1976.

By motion dated January 29, 1976, and filed January 30, 1976, CBR, by counsel, Eisenberg & Associates, sought an order granting a continuance of the trial from the scheduled date of February 2, 1976, to a date in the future. This motion was supported by an affidavit of John P. Louderman of the Eisenberg law firm, and was opposed by an affidavit of lawyer Gilbert F. Barnard. The motion was heard by the trial court on February 2, 1976, prior to the commencement of the trial, and was denied.

The Louderman affidavit contains, among others, the following averments. After Siehr was appointed trustee he notified Donald S. Eisenberg & Associates that he would take over the lawsuit and protect the interest of CBR. All of the files of CBR are in the possession of Siehr. On January 7, 1976, Louderman telephoned Siehr and was told by Siehr that he considered the lawsuit moot due to the financial condition of the bankrupt corporation and that he would not proceed, he (Louderman) had informed the trial court of that fact, and he informed the court that Donald S. Eisenberg & Associates

probably would not appear. On January 9, 1976, Louderman agreed to the February 2, 1976, trial date due to misinformation as to the merits of the case provided by Siehr. An investigation subsequent to January 9, 1976, revealed substantial merit in the case of CBR.

On February 2, 1976, this case came on for trial, and CBR appeared by its counsel, John Louderman and James Ewers, and Wiegel appeared in person and by his lawyer, Gilbert F. Barnard. After denial of CBR's motion for a continuance, the court directed CBR to proceed and its counsel then moved for a dismissal on the grounds that CBR no longer existed as an entity and had been discharged in bankruptcy on January 15, 1976, by an order of discharge entered by the bankruptcy court. This motion was denied, and CBR was directed to call its first witness. On failure of CBR to present a witness to prove and establish its cause of action the court dismissed its complaint on its merits. Wiegel thereupon proceeded to call witnesses and adduce testimony in support of his counterclaims. The trial court noted that there was no reply to the counterclaims on file and inquired as to whether CBR was in default as to each counterclaim. Wiegel's counsel informed the court that a reply to the counterclaims had been served on him by Eisenberg, but that the original had never been filed. Wiegel's counsel further informed the court that he considered the counterclaims at issue and not in default. At the close of Wiegel's presentation the court pronounced findings of fact and conclusions of law from the bench, which were thereafter reduced to writing, signed on February 11, 1976, and filed on February 13, 1976. A formal judgment dismissing the complaint of CBR on its merits with prejudice and granting Wiegel judgment on his counterclaims against CBR in the amount of $45,007 was entered on February 13, 1976. Notice of entry of judgment was served on Donald S. Eisenberg &

Associates as lawyers for CBR, on CBR, and on Siehr as trustee, on February 13, 1976.

On April 12, 1976, an order was signed substituting Carl F. Schetter of Milwaukee, Wisconsin, as counsel of record for CBR. This order was based upon a written consent signed by Donald S. Eisenberg and by CBR by Zietz, its president, and by Bleier, its secretary.

On April 13, 1976, Schetter, as counsel for CBR, served a notice of motion and motion to reopen and vacate the judgment entered on February 13, 1976, on the grounds that the judgment was entered as a result of mistake, inadvertence and excusable neglect on the part of CBR. This notice of motion was served on Barnard, Eisenberg and on Siehr as trustee. This motion is supported by the affidavit of Fred H. Bleier and the affidavit of William A. Zietz.

Bleier's affidavit contains, among others, the following averments. Eisenberg & Associates at no time during the pendency of this action (from April 30, 1974, to February 11, 1976) discussed any aspect of the case with Bleier, nor with any other officers, directors or stockholders of the corporation, nor was this litigation discussed at any regularly scheduled stockholders' meeting, directors' meeting or meeting of officers. Bleier had no knowledge of the status of this action, had heard nothing from the Eisenberg firm since the early part of May, 1974, and was not advised with respect to anything about the action until January 21, 1976, when Carl F. Schetter told him that the case was set for trial on February 2, 1976. Bleier directed the Eisenberg firm to write a letter to the court requesting an adjournment in order to allow his lawyer to properly protect the legal rights of CBR. Bleier states that his lawyer requested Siehr to keep Bleier informed of all pertinent matters in the bankruptcy proceeding, but that the trustee failed to do so. Bleier states that he is "now informed and believes that

there was merit to the cause of action alleged in plaintiff's complaint and that plaintiff has a meritorious defense to defendant's counterclaim." Bleier states that he was not advised or consulted with regard to the following matters: (1) the notice of motion and motion to strike dated June 10, 1974; (2) the order of the trial court dated July 16, 1974; (3) Bleier was not provided with a copy of the pleadings; (4) the fact that the notice of trial had been served on September 15, 1975; (5) the trial judge's letter of December 16, 1975, scheduling the pretrial conference; (6) no notice was received that on July 31, 1975, the bankruptcy court had signed an order vacating the stay of proceedings; (7) Bleier was not informed of any conferences between the Eisenberg firm and the trustee, nor was he notified that the Eisenberg firm intended to withdraw from the case; (8) CBR never authorized its lawyers to withdraw from the case; (9) CBR was never advised that its lawyers did not intend to appear at the pretrial conference, nor did it authorize the lawyers not to appear; (10) CBR was not consulted with regard to, and did not authorize, a waiver of a jury trial. Attached to Bleier's affidavit is a copy of the reply to the counterclaims which was not filed previously.

Zietz's affidavit contains, among others, the following averments. The first knowledge that Zietz received that the trustee was not prosecuting this lawsuit was during the last two weeks of January, 1976. On January 24, 1976, Zietz retained Eisenberg's office to represent his personal interests in the matter and paid Eisenberg & Associates a $500 retainer by personal check. Attached to Zietz's affidavit is a copy of a petition of the trustee to abandon property, dated March 24, 1976, in which the trustee states that he has possession of any and all rights the bankrupt may have had in this action pending in the circuit court for Lafayette county and that he has

reason to believe that the bankrupt's cause of action is either without merit or uncollectible, and the trustee prays for an order authorizing him to abandon the cause of action. Also attached to that petition is a copy of an order of the bankruptcy judge dated March 24, 1976, authorizing the trustee to abandon any right, claim, and interest he may have in the circuit court action.

The hearing on the motion to reopen and vacate the judgment was held on May 10, 1976. CBR appeared by Carl F. Schetter and Ellis R. Herbon. Wiegel appeared in person and by Gilbert F. Barnard.

On March 2, 1977, the trial court ordered that the motion of CBR to vacate the judgment rendered in favor of Wiegel and against CBR, and entered on February 13, 1976, be denied. This order was entered on March 3, 1977.

This appeal follows the entry of this order and presents the following issues:

1. Were the lawyers for CBR guilty of inexcusable neglect, and if so, was such neglect imputable to CBR?

2. Was CBR guilty of inexcusable neglect?

3. Was the trustee guilty of inexcusable neglect, and if so, was such neglect imputable to CBR?

Initially we observe that neither Zietz, Bleier, Sentry Indemnity Company, Eisenberg & Associates, nor Siehr as trustee, is a party to this action. Whatever rights or claims they may have against each other or Wiegel may have against any of them will be subject to determination in other litigation.

The case before us involves the cause of action of CBR against Wiegel and the counterclaims of Wiegel against CBR.

The review by this court of a decision of a trial court on a motion to vacate a judgment for excusable neglect is limited to the question of whether the trial court abused its discretion:

". . . The trial court has wide discretion in ruling on a motion to vacate a judgment. Its order will only be upset on appeal if there is clear abuse. *Hansher v. Kaishian,* 79 Wis.2d 374, 389, 255 N.W.2d 564 (1977) . . ." *Hollingsworth v. American Finance Corp.,* 86 Wis.2d 172, 184, 271 N.W.2d 872 (1978).

". . . This court will not find an abuse of discretion if the record shows that discretion was in fact exercised and if the record shows that there is reasonable basis for the trial court's determination." *Howard v. Duersten,* 81 Wis.2d 301, 305, 260 N.W.2d 274 (1977).

Sec. 806.07, Stats., provides:

"(1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

"(a) Mistake, inadvertence, surprise, or excusable neglect;

". . . .

"(2) The motion shall be made within a reasonable time, and, if based on sub. (1) (a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. . . ."

The one year period in sec. 806.07 (2), Stats., constitutes the maximum time allowed for bringing a motion to vacate on the grounds of mistake, inadvertence, surprise or excusable neglect. *Rhodes v. Terry,* 91 Wis.2d 165, 171, 280 N.W.2d 248 (1979). However, the fact that the motion is brought within one year after entry of judgment does not mean that the motion is timely. *Id.*

This court stated in *Rhodes v. Terry, supra,* at 172, 173:

"It is important to note the procedural ramifications imposed by the new amendment setting forth a 'reasonable time' requirement. The primary issue to be addressed by the court is whether the motion has been timely filed 'within a reasonable time.' On the other hand, if the motion is based upon subsection (1) (a) and (c) of sec. 806.07, the added requirement must also be

complied with that the motion be filed within one year from entry of the judgment. If the court has concluded the motion was timely filed, then *Wagner v. Springaire Corp.*, 50 Wis.2d 212, 220, 184 N.W.2d 88 (1971) sets forth the two essential elements to be considered in deciding a motion to vacate a judgment. First, do the moving papers demonstrate good cause to establish the validity of the grounds for the motion? Second, do the proposed pleadings contain facts and information to establish a meritorious defense?"

In this case, judgment was entered against CBR on February 13, 1976. CBR served its motion to vacate the judgment on April 13, 1976, 60 days later, which, of course, was within the one-year statutory maximum time limitation. Nevertheless,

". . . the intent of the new statute adopting the 'reasonable time' requirement was to shorten the time period for filing a motion to vacate rather than allowing these motions to be filed up to a year after entry of the judgment as permitted by the former statute, sec. 266.46, [sic] 1973. It is necessary to restrict the time for filing a motion to vacate in order to insure the orderly disposition of cases and encourage the finality of judgments, thus improving the administration of justice. Thus, the question to be answered is not whether the motion was brought within the one-year time period, but whether the motion was made within a 'reasonable time' pursuant to sec. 806.07, Stats.

". . . [T]he court should consider the particular facts and circumstances of the case in deciding whether the motion was brought within a reasonable time. . . ." *Rhodes v. Terry, supra,* at 173.

We have reservations as to whether the motion to vacate was brought within a reasonable time. A judgment was entered against CBR in the amount of $45,007, and it had executed a bond in the amount of $44,000. A delay of 60 days in moving for vacation of such a

sizable judgment is not a prompt application for relief. Furthermore, the ability of Wiegel to maintain suit on the bond is dependent upon the judgment on his counterclaims against CBR. The motion to vacate prevents Wiegel from realizing on the bond. Wiegel acted diligently in prosecuting his counterclaims and we believe it is unreasonable for him to have to wait 60 days to see whether he can endeavor to collect the judgment rendered on his counterclaims.

However, the trial court approached the issue of excusable neglect with an exhaustive review of the record and, in the exercise of its discretion, determined that excusable neglect had not been established. This court has said that "excusable neglect" is the neglect which might have been the act of a reasonably prudent person under the same circumstances. *Hollingsworth v. American Finance Corp., supra,* at 185; *Dugenske v. Dugenske,* 80 Wis.2d 64, 68, 257 N.W.2d 865 (1977); *Wagner v. Springaire Corp.,* 50 Wis.2d 212, 217, 184 N.W.2d 88 (1971); *Giese v. Giese,* 43 Wis.2d 456, 461, 168 N.W.2d 832 (1969).

In determining whether the "reasonably prudent person" standard has been met, the trial court should consider whether the person has acted promptly to remedy his situation and whether vacation of the judgment is necessary to prevent a miscarriage of justice. *Dugenske v. Dugenske, supra,* at 68, 69; *Cruis Along Boats, Inc. v. Stand. S. P. Mfg. Co.,* 22 Wis.2d 403, 410, 411, 126 N.W.2d 85 (1964).

Factors favoring upholding a denial of a motion to vacate a judgment are

". . . a policy in favor of the finality of judgments, the probability that a policy which excused or tolerated a lawyer's neglect would foster delay in litigation and a

further belief that the quality of legal representation is best maintained by refusing to overlook the effects of a lawyer's negligence." *Dugenske v. Dugenske, supra,* at 70.

Eisenberg and Associates represented CBR in this litigation from the time of its commencement on April 30, 1974, until they were substituted on April 12, 1976. There is no evidence in the record indicating that this law firm made any effort to investigate or ascertain the status of the bankruptcy proceeding on behalf of CBR. They were served with a notice of trial and certificate of readiness on September 16, 1975, but apparently did not communicate with their client or make any effort to prepare the case for trial. They were notified by the court by letter dated December 16, 1975, as to the date of the pretrial conference and the trial date. This notice was given to them 24 days prior to the pretrial conference and 48 days prior to the commencement of the trial. They failed to appear at the pretrial conference. Louderman then agreed, by telephone, to the trial of the case on February 2, 1976, and waived trial by jury apparently without the consent or knowledge of his client. In the last two weeks before the trial, they attempted to delay the trial by filing a request for substitution of judge and a motion for continuance. They came to the trial without witnesses and apparently unprepared to either establish their client's cause of action or defend against the counterclaims of Wiegel.

The acts, omissions and conduct of Eisenberg & Associates would not have been committed by a reasonably prudent person under the same circumstances, and therefore do not constitute excusable neglect.

CBR contends, however, that any neglect on the part of its lawyers should not be imputed to it.

A court is not bound to impute to a client everything his lawyer does or omits to do. *Paschong v. Hollenbeck,* 13 Wis.2d 415, 423, 108 N.W.2d 668 (1961). Mistakes, ill advice, or other failures of a lawyer may constitute excusable neglect on the part of the client, when the client has acted as a reasonable and prudent person in engaging a lawyer of good reputation, has relied upon him to protect his rights, and has made reasonable inquiry concerning the proceedings. *Wagner v. Springaire Corp., supra,* at 221; *Paschong v. Hollenbeck, supra,* at 423. In deciding whether to impute the negligence of the lawyer to the client, the trial court must exercise its "equitable powers to secure substantial justice between the parties." *Id.* at 424. This discretion may or may not call for imputation, depending on the facts of each case. *Id.*

In the instant case, it can be said that CBR acted reasonably and prudently in first engaging Eisenberg & Associates to handle this litigation, and that CBR relied upon Eisenberg & Associates to protect its rights. However, the record is devoid of any showing that CBR's president, William A. Zietz, or its secretary, Fred H. Bleier, or any other representative of the corporation made reasonable inquiry concerning the status of this litigation. In fact, it appears that Zietz and Bleier made no effort whatsoever to find out why this lawsuit was not being prosecuted by the Eisenberg firm. From early May, 1974, until January, 1976, no officer or representative of CBR contacted the Eisenberg firm. It was not until the two officers became aware that they might suffer some personal liability that they began to inquire about the status of these proceedings. This is not the type of situation which might exonerate a "reasonably prudent person under the same circumstances" from the

imputation of unexcused neglect. Therefore, it was not an abuse of discretion to impute the neglect of Eisenberg & Associates to CBR.

Since we have held the neglect of Eisenberg & Associates was not excusable and that such neglect was imputable to CBR, it is perhaps immaterial whether the conduct of CBR itself was excusable neglect. However, on appeal CBR alleges the trial court abused its discretion in concluding that CBR had not demonstrated excusable neglect.

Zietz, as corporate president, knew the merit or lack of merit of the cause of action of CBR. He verified the original complaint and signed an affidavit as a basis for the issuance of the original order to show cause. He had knowledge of the defenses allegedly available to the counterclaims since he verified the reply to the counterclaims. He made no attempt from early May, 1974, to January, 1976, to find out why this lawsuit was not being prosecuted by the Eisenberg firm. Notice of trial was sent to him in September, 1975, yet he apparently did not get in touch with the Eisenberg firm concerning the trial until sometime in January, 1976. Similarly, Bleier, as secretary, had full knowledge of the existence of this litigation, yet he made no effort to learn about the status of this litigation until January, 1976. This is clearly not what would have been done by a "reasonably prudent person" in the same circumstances. Thus, the trial court did not abuse its discretion in ruling that the neglect of CBR was not excusable.

The trial court also held that the cause of action of CBR vested in the trustee and it was his duty to promptly ascertain its merits and its value, that the trustee was guilty of inexcusable neglect, and that his neglect was imputable to CBR.

Sec. 70(a) of the Bankruptcy Act (11 U.S.C. sec. 110(a)) provides:

"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, . . . (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property; . . ."

Thus, CBR's cause of action against Wiegel vested in the trustee.

11 U.S.C. Rule 610, Rules of Bankruptcy Procedure, states:

"The trustee or receiver may, with or without court approval, prosecute or enter his appearance and defend any pending action or proceedings by or against the bankrupt, or commence and prosecute any action or proceeding in behalf of the state, before any tribunal."

The word "court" means

". . . the judge or the referee of the court of bankruptcy in which the proceedings are pending;" 11 U.S.C. sec. 1(9).

Thus, the trustee did not need the approval of the bankruptcy court in order to prosecute this action in circuit court.

However, this court has stated that section 11(b) of the Bankruptcy Act (11 U.S.C. sec. 29(b), from which 11 U.S.C. Rule 610 is derived) does not control, and was not intended to control, the practice in state courts, but places upon the trustee the duty to prosecute or appear and defend *according to the rules and practice of the state court*. *Bank of Commerce v. Elliott*, 109 Wis. 648, 655, 85 N.W. 417 (1901); *National Distilling Co. v. Seidel*, 103 Wis. 489, 491, 79 N.W. 744 (1899).

". . . it is well settled that the right of a trustee in bankruptcy to intervene in a cause pending in a state court must be determined in and under the practice and rules of state court." *In Re Physicians and Dentists Investment Corporation*, 258 F. Supp. 793, 802 (D.C.S.C. 1966)

Sec. 803.09, Stats., Intervention, provides:

"(1) Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

". . .

"(3) A person desiring to intervene shall serve a motion to intervene upon the parties as provided in s. 801.14. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene."

No motion to intervene was ever made or served by the trustee. Therefore, the trustee was never a party to this action. In view of the fact that the trustee was never a party to this action, it is immaterial whether the trustee was guilty of inexcusable neglect. Any neglect on the part of the trustee would not have an effect on any right of CBR to have the judgment in this case vacated.

Wiegel has acted diligently throughout this proceeding. Where a party has diligently pursued his cause of action, it is unfair to deprive him of his judgment because of inexcusable delays of the adverse party. *Wagner v. Springaire Corp.*, *supra*, at 222. The trial court did not abuse its discretion in denying the motion to vacate and its exhaustive written decision demonstrates a well-

founded basis for the exercise of its discretion and supports its decision.

*By the Court.*—Order affirmed.