William K. GARFOOT, Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY and Mt. Horeb Farmer's Cooperative, Defendants-Respondents,

MAZOMANIE-BLUE MOUNDS MUTUAL INSURANCE COMPANY, Time Insurance Company, Associated Engineers, Inc., Tudor Insurance Company, General Heating & Air Conditioning, Inc., Dale Scholl, d/b/a All Temperature Service and Action Heating and Air Conditioning, Inc., ABC Insurance Company, DEF Insurance Company and GHI Insurance Company, Defendants,

Pamela LUNDER, d/b/a Lunder Law Office and National Union Fire Insurance Company of Pittsburgh, Defendants-Appellants. [Case No. 98–1618]

William K. GARFOOT , Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY , Mt. Horeb Farmers Cooperative, Mazomanie-Blue Mounds Mutual Insurance Company, Defendants,

TIME INSURANCE COMPANY , Associated Engineers, Inc., Tudor Insurance Company, General Heating & Air Conditioning, Inc., and ABC Insurance Company, Defendants-Co-Appellants,

DEF INSURANCE COMPANY and GHI Insurance Company, Defendants,

707

Pamela LUNDER , d/b/a Lunder Law Office and National Union Fire Insurance Company of Pittsburgh, Defendants-Appellants,

Dale SCHOLL , d/b/a All Temperature Service and Action Heating and Air Conditioning, Defendants-Respondents. [Case No. 98–1662]

Court of Appeals

*Nos. 98–1618, 98–1662. Oral argument March 18, 1999.—Decided June 10, 1999.*

(Also reported in 599 N.W.2d 411.)

. On behalf of the defendants-appellants, Pamela Lunder, d/b/a Lunder Law Office and National Union Fire Insurance Company of Pittsburgh, the cause was

submitted on the briefs of *Claude J. Covelli* of *Boardman, Suhr, Curry & Field LLP* of Madison.

On behalf of the defendants-co-appellants, Associated Engineers, Inc., and Tudor Insurance Company, the cause was submitted on the briefs of *Steven J. Caulum* and *Stephen E. Ehlke* of *Bell, Gierhart & Moore, S.C.* of Madison.

On behalf of the defendants-co-appellants, General Heating & Air Conditioning and ABC Insurance Company, the cause was submitted on the brief of *Robert J. Kay* and *James N. Graham* of *Kay & Andersen, S. C.* of Madison.

On behalf of the defendants-respondents, Fireman's Fund Insurance Company and Mt. Horeb Farmers Cooperative, the cause was submitted on the brief of *James J. Kriva* of *Kasdorf, Lewis & Swietlik, S. C.* of Milwaukee.

On behalf of the defendants-respondents, Dale Scholl, d/b/a/ All Temperature Service, the cause was submitted on the brief of *Edith F. Merila* and *Lori M. Lubinsky* of *Axley Brynelson, LLP*, of Madison.

On behalf of the defendants-respondents, Action Heating & Air Conditioning, Inc., the cause was submitted on the brief of *John Theiler Bode* and *John V. McCoy* of *Bode, Carroll, McCoy & Hoefle, S.C.*, of Waukesha.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J. William Garfoot was injured when a gas explosion occurred while he was lighting the pilot light of a hot water heater. While investigating the cause of the explosion, a technician, hired by the engineer who was hired by Garfoot's attorney, dis-

turbed evidence that would have either proved or disproved Garfoot's claim that a leak in the piping system caused the explosion. After concluding that the actions of Garfoot's attorney, Pamela Lunder, and other agents of Garfoot caused this destruction of evidence at the site, the trial court dismissed two of Garfoot's claims against Mount Horeb Farmer's Cooperative and its insurer, and all claims and cross-claims against Dale Scholl, d/b/a All Temperature Service, and Action Heating and Air Conditioning, Inc.

Lunder, Associated Engineers, Inc. (the engineer's firm), and General Heating & Air Conditioning, Inc. (the technician's company) appeal. Their primary contention is that the trial court applied an incorrect legal standard for imposing the sanction of dismissal for the destruction of evidence because it did not find the conduct of Lunder or the others was egregious, and it did not find the destruction of evidence gave Garfoot an advantage over opposing parties.

We reaffirm our holding in *Milwaukee Constructors II v. Milwaukee Metro. Sewerage Dist.*, 177 Wis. 2d 523, 502 N.W.2d 881 (Ct. App. 1993), that dismissal as a sanction for destruction of evidence requires a determination that there was a conscious attempt to affect the outcome of the litigation or a flagrant knowing disregard of the judicial process. We therefore reverse and remand. We also clarify the standard for imputing the conduct of a client's attorney, and those hired by the attorney, to the client for purposes of sanctions; and we decide that a trial court may, in the appropriate case, impose the sanction of dismissal for egregious conduct resulting in the destruction of evidence even if there is no prejudice to the opposing party.

711

## BACKGROUND

On September 1, 1995, Garfoot was seriously burned by a propane gas explosion while lighting the pilot light of a hot water heater at his duplex. He was immediately taken to the hospital and admitted to the burn unit. Within hours of the explosion, Nancy Fielder, a friend of Garfoot and co-owner of the duplex, contacted Attorney Pamela Lunder.

Lunder was a friend of Garfoot and Fielder and had previously provided them legal services. She was not an experienced personal injury attorney. Lunder contacted several personal injury attorneys for advice and tried, without initial success, to retain one. She also made contacts to secure the accident site and arrange for an inspection. At the direction of Fielder, Lunder arranged for Harry Balch of Associated Engineers to inspect the explosion site to determine whether a gas leak existed in the system. Balch then retained General Heating to provide a technician for the inspection. On September 6, 1995, an attorney from Lunder's office, along with Balch, a technician from General Heating, a photographer, and a representative of Mazomanie-Blue Mounds Insurance Company conducted an inspection of the explosion site.

The technician from General Heating did not have experience in pressure testing a liquid propane (LP) system. As part of his testing process, he disconnected, capped and then reconnected two joints in the gas piping system while no one was watching him.[1] One of those joints was located near the furnace and the other near the hot water heater. Because these joints were

---

[1] The technician also disconnected, capped and reconnected a joint on the outside of the duplex, but that joint is not relevant to this appeal.

disconnected and then reconnected, they could no longer be directly tested to see if they leaked at the time of the explosion. All other joints in the system were tested and no leak was found.

Later, experts retained by Mt. Horeb and Garfoot conducted additional tests and came to opposing conclusions on the cause of the explosion. Mt. Horeb's expert opined that Garfoot released the gas into the room, while Garfoot's expert opined that the explosion resulted from a gas leak from a joint in the piping system. Since the direct testing had ruled out a leak in every joint except for the two that were disconnected by the technician, Garfoot claimed that the leak was in one of those two joints. However, both experts agreed that the presence or absence of a leak in either of the two joints in question could not be proved with absolute certainty due to the disconnection and reconnection by the technician.

Garfoot filed a complaint against Mt. Horeb, which had installed the pipe and supplied the LP, claiming that Mt. Horeb's negligence in the installation and inspection of the piping and in the odorization process caused the explosion. Garfoot later added two additional parties to the negligent installation and inspection claim: Dale Scholl, d/b/a All Temperature Service,[2] who, while converting the furnace to LP gas the day before the explosion, had removed and replaced sixty-eight inches of pipe by the furnace; and Action Heating and Air Conditioning, Inc., which had installed the furnace. Garfoot also added Associated Engineers and General Heating as defendants, based on a claim of destruction of evidence, and Lunder and

---

[2] We refer to Scholl in this opinion as All Temperature.

her insurer, claiming that Lunder was negligent in rendering legal services to Garfoot.[3]

Mt. Horeb moved for sanctions against Garfoot on the ground that the General Heating technician was Garfoot's agent and his disruptive testing procedure made it impossible to prove, through direct testing of the joints, that there was no leak at those joints at the time of the explosion. Mt. Horeb also moved for partial summary judgment on those claims that alleged negligence in installing and servicing the gas piping system caused a gas leak in the system.

After briefs and oral argument, the trial court granted both motions. The trial court interpreted *Sentry Ins. Co. v. Royal Ins. Co.*, 196 Wis. 2d 907, 539 N.W.2d 911 (Ct. App. 1995), to require a sanction for negligent destruction of evidence, or "at least [destruction] without consideration of the effects that the destruction would have on the opposing party's ability to adequately defend a particular claim," even though the conduct was not "entirely willful or deliberate or intentional." The trial court determined that the only appropriate sanction was to bar Garfoot from claiming there was a leak in either of the two joints that were disturbed during the inspection:

> It was the plaintiff's conduct through its agents that destroyed that evidence. It was the plaintiff's conduct through its agents that, therefore, made

---

[3] Garfoot also named as defendants his casualty insurance carrier, Mazomanie-Blue Mounds Mutual Insurance Company and his health care insurer, Time Insurance Company. Mt. Horeb and its insurer filed a cross-claim against Mazomanie and a counterclaim against Garfoot, alleging that they, acting through their agents, committed intentional and negligent spoliation of evidence. The details of other cross-claims between defendants are not relevant to this appeal.

Mount Horeb's ability to defend against a claimed leak inadequate.

They are left only with the circumstantial evidence that their expert would opine and are denied the ability to have the absolute evidence, if it existed, that no leak was in that system.

The plaintiff further argues that the plaintiff has been harmed by that conduct as well. And if the plaintiff means Mr. Garfoot, I certainly agree, because Mr. Garfoot is also unable to absolutely establish beyond any doubt that a leak existed.

However, it was Mr. Garfoot's conduct that caused that circumstance through employing the agents that he had elected to employ at that particular time, through counsel and through the engineers and through General Heating. So the sanction has to be against the plaintiff for creating the situation which does not permit the defense to adequately defend against this claim.

The trial court repeated and elaborated on these reasons when it subsequently granted the motions of All Temperature and Action Heating for summary judgment and denied the motions of Lunder and General Heating for reconsideration. In that decision the court determined there was an attorney-client relationship between Lunder and Garfoot; that Lunder's retention of Balch (with Associated Engineers) to inspect the site was in furtherance of potential litigation on Garfoot's behalf; and that Balch, and the technician Balch retained, were agents of Lunder. The court then rejected for a second time the proposal that both sides submit their expert testimony to the jury and let the jury decide whether there was or was not a leak:

715

[A] sanction is necessary because Attorney Lunder, by acting in furtherance of William Garfoot's interests in retaining an expert to examine the premises following the explosion, created a situation where Mount Horeb could not properly defend the accusation that they created or permitted a leak to exist in the system following their installation.

The court again acknowledged that Garfoot, as well as Mount Horeb, was prevented from answering with certainty whether a leak existed. However, because the inability to answer that question was caused by Garfoot, through the actions of his attorney, the court remained of the opinion that the sanction of dismissing the claims of negligent installation and inspection—against All Temperature and Action Heating as well as Mount Horeb—was appropriate. The court also explained that its interpretation of the case law remained the same: the conduct for which the sanction of dismissal is imposed does not need to be intentional in the sense of an intent to destroy evidence and affect the outcome of the litigation, but rather "negligent conduct may give rise to a situation where a sanction [of dismissal] is required."

Associated Engineers, General Heating and Lunder appealed the summary judgment dismissing All Temperature and Action Heating. We granted leave for Lunder to appeal the partial summary judgment dismissing the claims of negligent installation and inspection against Mount Horeb and consolidated the appeals.

## DISCUSSION

A trial court's decision whether to impose sanctions for the destruction or spoliation of evidence,[4] and what sanction to impose, is committed to the trial court's discretion. *See Sentry*, 196 Wis. 2d at 916, 539 N.W.2d at 915. We affirm discretionary rulings if the trial court has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach. *Milwaukee Constructors II*, 177 Wis. 2d at 529–30, 502 N.W.2d at 883. The first issue we address is whether the trial court applied the correct legal standard in concluding that the sanction of dismissal required only a finding that the conduct resulting in the destruction of evidence was negligent and did not require a finding that the conduct was egregious or that the actor intended to destroy evidence. This is a legal question, which we review de novo, while benefiting from the trial court's analysis. *See Drow v. Schwarz*, 225 Wis. 2d 362, 365, 592 N.W.2d 623, 625 (1999).

As all parties and the trial court agree, the three cases relevant to a resolution of this issue are *Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 211 N.W.2d 810 (1973), *Milwaukee Constructors II* and *Sentry*, decided in that order. We begin with *Jagmin*, which concerned the standard for an instruction permitting

---

[4] We recognize that no physical item was destroyed by the technician, but, rather that his disconnection and reconnection of the joints prevented direct testing of the joints to determine whether they did or did not contain a leak at the time of the explosion. However, the inability to test in order to produce evidence is, as all parties concede, a destruction or spoliation of evidence as those terms are used in this context.

the jury to draw a negative inference from missing evidence. The supreme court affirmed the trial court's decision that the instruction was not appropriate because there was no evidence that the defendants had intentionally destroyed or fabricated evidence by substituting a second grinding wheel. *Jagmin*, 61 Wis. 2d at 81, 211 N.W.2d at 821. The court rejected the position that negligence in the handling of the evidence was sufficient, stating:

> In Wisconsin the operation of the maxim omnia praesumunter contra spoliatorem is reserved for deliberate, intentional actions and not mere negligence even though the result may be the same as regards the person who desires the evidence.

*Id.* (footnote omitted).

Twenty years after *Jagmin*, this court in *Milwaukee Constructors II* considered the proper standard for dismissal as a sanction for the destruction of documents. In reviewing a trial court order of dismissal, we approved of the trial court's consideration of the following factors in deciding whether to impose sanctions for the destruction of documents:

> (i) identification, with as much specificity as possible, of the documents which were destroyed; (ii) the relationship of those documents to the issues in the present action; (iii) the extent to which such documents can now be obtained from other sources; (iv) whether [the party responsible for the document destruction] knew or should have known at the time it caused the destruction of the documents that litigation against [the opposing parties] . . . was a distinct possibility, and (v) whether, in light of the circumstances disclosed by the factual inquiry, sanctions should be imposed upon [the party

responsible for the document destruction] and, if so, what the sanctions should be.

*Milwaukee Constructors II*, 177 Wis. 2d at 532, 502 N.W.2d at 884 (quoting *Struthers Patent Corp. v. Nestle Co.*, 558 F. Supp. 747, 756 (D.N.J. 1981)).

However, we stated, "[i]n addition . . . dismissal is a sanction that should rarely be granted and is appropriate only in cases of 'egregious conduct.' " *Id.* at 532–33, 502 N.W.2d at 884 (citing *Trispel v. Haefer*, 89 Wis. 2d 725, 732, 279 N.W.2d 242, 245 (1979)); *see also Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 279–80, 470 N.W.2d 859, 864 (1991) (failure to comply with circuit court scheduling and discovery orders without clear and justifiable excuse is egregious conduct; trial court's dismissal as sanction is proper exercise of discretion).[5] We continued:

> A finding of "bad faith" or egregious conduct in the context of a document destruction case involves more than negligence; rather, it consists of a conscious attempt to affect the outcome of the litigation or a flagrant, knowing disregard of the judicial process. *See, e.g., Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443 (C.D. Cal. 1984) (destruction of records and computer backup information in violation of an express court order to preserve the specific categories of records destroyed); *Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 80–81, 211 N.W.2d 810, 820–21 (1973) (to support rebuttable inference that unavailable

---

[5] The supreme court has most recently emphasized that dismissal with prejudice is a drastic sanction in *State v. Smythe*, 225 Wis. 2d 456, 468, 592 N.W.2d 628, 633 (1999) (reversing and remanding dismissal of appeal for this court to consider whether the attorney's conduct was egregious).

evidence was adverse, opposing party must present clear and convincing proof that party intentionally destroyed the evidence).

*Milwaukee Constructors II*, 177 Wis. 2d at 533, 502 N.W.2d at 884–85.

The record in *Milwaukee Constructors II* consisted of affidavits from the document custodians stating they had not intended to destroy original documents relevant to the litigation and, to the best of their knowledge, those documents relevant to the litigation that had been destroyed were copies of documents maintained elsewhere. There was also deposition testimony showing the custodians knew the risks of destroying documents pending litigation and failed to implement prior procedures to protect against that. We concluded there was no reasonable inference that the custodians sought to impair the ability of the defendants to discover information or sought to affect the outcome of the litigation. *Id.* at 535, 502 N.W.2d at 885. Therefore, we concluded as a matter of law that, although Milwaukee Constructors II's conduct was "volitional and negligent, [it did] not rise to the level of egregiousness that warrants dismissal of the lawsuit." *Id.*

We also concluded the record did not support the trial court's conclusion that the defendants had been prevented from presenting a defense: there was evidence that many of the original documents were available and the destroyed documents were not relevant to both of the claims that were dismissed. *Id.* at 537, 502 N.W.2d at 886. We remanded to permit the trial court to determine what sanctions were necessary "to punish [the plaintiff] for its negligent conduct," taking into account both its conduct and the defendants' need for the documents for each claim, including how

the absence of any documents would impair their ability to establish a defense. *Id.* at 538, 502 N.W.2d at 886.

Two years later in *Sentry,* we affirmed a trial court's decision prohibiting the introduction of evidence concerning the condition of a refrigerator that allegedly caused a fire, as a sanction for the destructive testing and subsequent disposal of the refrigerator. *Sentry,* 196 Wis. 2d at 911, 539 N.W.2d at 913. That sanction resulted in summary judgment dismissing Sentry's claims against the manufacturer because Sentry could not maintain its claims without evidence of the refrigerator's condition. *Id.* at 914, 539 N.W.2d at 914. On appeal we concluded these factual findings were supported by the record: the removal of the component parts prevented the defendants from conducting tests to determine if the refrigerator was the cause of the fire; the disposal precluded them from determining the serial or model number and examination of the wires; and the photographs taken by Sentry's expert and the component parts that were removed were inadequate for the purpose of a defense. We observed that the trial court found the disposal of the refrigerator "was at least negligence," and removal of the component parts was "an intentional act by Sentry's expert." We also observed that the trial court determined it was not necessary to decide whether disposal of the refrigerator "was an intentional act." *Id.* at 918, 539 N.W.2d at 915.

In addressing Sentry's argument that *Jagmin* and *Milwaukee Constructors II* do not permit dismissal for the negligent destruction of evidence, we stated:

> *Jagmin* and *Milwaukee Constructors* do not support Sentry's claim for two compelling reasons. First, the trial court found as a fact that the removal of the

component parts was an intentional act that deprived Royal of the opportunity to conduct tests essential to its adequate defense of the claim made against it. Thus, we are not dealing with negligent conduct, but what the court found to be intentional conduct, at least as to the removal of the wiring and component parts. Second, we do not agree that *Jagmin* and *Milwaukee Constructors* preclude the sanction imposed by the trial court for Sentry's intentional and negligent conduct in failing to properly preserve the refrigerator, which it knew was essential to its claim against Royal. There is a duty on a party to preserve evidence essential to the claim being litigated. The failure to take adequate steps to preserve evidence that was totally within Sentry's control is sufficient to justify the imposition of sanctions.

*Id.* at 918–19, 539 N.W.2d at 915–16.

In this case the trial court discussed and carefully analyzed this prior case law and arrived at the conclusion that *Sentry* modifies the standard established in *Milwaukee Constructors II*, and permits the sanction of dismissal without a finding that a party, or the party's agents, engaged in egregious conduct or intended to destroy evidence and affect the litigation. We acknowledge that this reading of *Sentry* is a reasonable one. However, this court does not have the power to overrule, modify or withdraw language from a published opinion of this court. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997).[6] In view of this

---

[6] This court may not, of course, overrule or modify a decision of our supreme court. *State v. Carviou*, 154 Wis. 2d 641, 644–45, 454 N.W.2d 562, 564 (Ct. App. 1990). However, because *Jagmin* addressed the standard for the jury instruction permitting a negative inference from the destruction of evidence rather than

limitation on our authority, when we are presented with a published decision of our court that arguably overrules, modifies or withdraws language from a prior published decision of this court, we must first attempt to harmonize the two cases. That is, if there is a reasonable reading of the two cases that avoids the second case overruling, modifying or withdrawing language from the first, that is the reading we must adopt.

We conclude that *Sentry* may be reasonably read as adhering to, rather than modifying, the standard established in *Milwaukee Constructors II*. We therefore adopt that reading. In *Sentry* we recited the details of Sentry's conduct. Sentry's expert had removed a number of parts from the refrigerator. Sentry responded that the refrigerator door was not available when the defendants asked to see it, and Sentry subsequently informed the defendants that the refrigerator had been discarded in the local landfill by the owner of the warehouse, where Sentry had stored it.[7] In rejecting Sentry's arguments based on *Jagmin* and *Milwaukee Constructors II*, we did not state that we were establishing a lower standard, but rather referred to the trial court's finding that Sentry's removal of the component parts was intentional rather than negligent, thus indicating that the trial court's decision was consistent with those two cases. We also summarized Sentry's conduct as: "intentional and negligent conduct in fail-

the standard for the sanction of dismissal, the significant potential inconsistency is between *Sentry* and *Milwaukee Constructors II*, not between *Sentry* and *Jagmin*.

[7] The warehouse owner contended that Sentry authorized the disposal, and Sentry claimed it was done without authorization and contrary to its instructions to the warehouse owner. *Sentry Ins. Co. v. Royal Ins. Co.*, 196 Wis. 2d 907, 912, 539 N.W.2d 911, 913 (Ct. App. 1995).

ing to properly preserve the refrigerator, which it knew was essential to its claim against Royal . . . [and which] was totally within Sentry's control." *Sentry*, 196 Wis. 2d at 918–19, 539 N.W.2d at 916. Our discussion is consistent with a conclusion that Sentry's conduct did meet the standard for dismissal established in *Milwaukee Constructors II*.

We now reaffirm our holding in *Milwaukee Constructors II* that dismissal as a sanction for destruction of evidence requires a finding of egregious conduct, which, in this context, consists of a conscious attempt to affect the outcome of litigation or a flagrant knowing disregard of the judicial process. *See Milwaukee Constructors II*, 177 Wis. 2d at 532–33, 502 N.W.2d at 884–85.

Some of the respondents suggested at oral argument that, even if this is the proper standard, we may affirm the trial court's decision because the evidence supports a finding that the conduct of Lunder was egregious. In particular, counsel for Mount Horeb argued that a letter from Attorney Leslie Kramer of the Lunder Law Office to Mt. Horeb's insurer demonstrates an effort to keep the defendants from examining the relevant evidence in order to give Garfoot an advantage. That letter, dated September 6, 1995, states:

> This is to confirm our telephone conversation on September 5, 1995. As I explained at that time, we will make arrangements for you or your designee to review the property after our own experts have had an opportunity to view the explosion site. I will be in contact with you soon.

■■■

While the inference Mt. Horeb wishes us to draw from this letter is perhaps a reasonable inference, it is

not the only reasonable inference. When more than one inference is reasonable, it is the function of the trial court sitting as fact-finder, not this court, to decide which inference to draw. *See Wisconsin State Employees Union v. Henderson*, 106 Wis. 2d 498, 501–02, 317 N.W.2d 170, 171–72 (Ct. App. 1982). This record does not permit us to conclude as a matter of law that Lunder's conduct meets the standard of egregious conduct established in *Milwaukee Constructors II*.

We have also considered whether we should interpret the trial court's decision as resting on a finding that Lunder's conduct was *not* a conscious attempt to influence the outcome of litigation or a flagrant disregard of the judicial process. However, we are unable to say with confidence that the trial court intended to make such a finding, rather than to refrain from doing so because of its view that such a finding was unnecessary. We conclude the better course is to remand to permit the trial court to determine whether Lunder's conduct was egregious, as defined in *Milwaukee Constructors II* and reaffirmed in this decision. If the court concludes Lunder's conduct was not egregious but was negligent, then it should consider whether a sanction short of dismissal is appropriate and, if so, what sanction. We observe that if there are factual disputes, or conflicting reasonable inferences from undisputed facts, an evidentiary hearing will be necessary.[8]

---

[8] The respondents moved for sanctions and for summary judgment at the same time. The summary judgment motions are based on the assumption that, if all evidence regarding the two joints is suppressed, there is no need for a trial on the claims relating to those joints because there is no evidence to support the claims. At oral argument counsel for one of the respondents expressed the view that summary judgment methodology was appropriate to resolve the motion for sanctions. We disagree.

725

Lunder raises four additional issues on her appeal that may arise again at the hearing after remand, regardless of whether the court finds her conduct egregious or negligent. We therefore address these now.

First, Lunder challenges the court's ruling that her actions should be imputed to Garfoot for purposes of imposing a sanction.[9] Lunder contends there is no evidence that Garfoot expressly or implicitly consented to Fiedler initially retaining Lunder on his behalf, but does not challenge the court's alternative determination of ratification. We affirm the trial court's determination that when Garfoot formally retained Lunder, he ratified any actions she took on his behalf before that time, and she was therefore his agent when the events concerning the testing occurred.

Because there was an attorney/client relationship between Lunder and Garfoot at the time of the relevant events, the conduct of Lunder may be considered by the court in deciding whether to impose a sanction against Garfoot. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 283–85, 470 N.W.2d 859, 868 (1991). As Lunder points out, a trial court does have the discretion *not* to impute the conduct of an attorney to his or her client for purposes of sanctions. *See id.* However, we do not agree with Lunder that the trial court misunderstood this law and believed it *had* to impose sanctions against Garfoot because of Lunder's conduct. Rather

---

The two motions are distinct. On the motion for sanctions, if there are disputed facts or disputed inferences from the facts, an evidentiary hearing, rather than simply oral argument based on briefs, affidavits and depositions, is necessary to resolve those disputes. *See State v. Jason R.N.*, 201 Wis. 2d 646, 648, 549 N.W.2d 752, 753 (Ct. App. 1996).

[9] Garfoot has not appealed the trial court's decision on sanctions.

the court did consider the impact its ruling would have on Garfoot and concluded that he would have a remedy on his claims against Lunder and other parties. That is one reason the court in *Johnson* rejected a blanket rule prohibiting dismissal as a sanction for counsel's conduct when the client bears no personal responsibility for that conduct. *See Johnson*, 162 Wis. 2d at 285, 470 N.W.2d at 868.

The recent decision of *State v. Smythe*, 225 Wis. 2d 456, 469–70 n.11, 592 N.W.2d 628, 634 (1999),[10] emphasizes that whether a client acted prudently, and whether a client knew of or was complicit in the attorney's conduct, are significant considerations in deciding whether to impute that conduct to the client for purposes of the sanction of dismissal. Since *Smythe* concerned the sanction of dismissal, egregious conduct was required. However, in its discussion on imputing the attorney's conduct to the client, the court relied in part on *Charolais Breeding Ranch, Ltd. v. Wiegel*, 92 Wis. 2d 498, 285 N.W.2d 720 (1979), in which the attorney's conduct was not egregious but, rather,

[10] *State v. Smythe*, 225 Wis. 2d 456, 592 N.W.2d 628 (1999), was released after oral argument in this case. The court in *Smythe* describes the situations as "unusual" in which the egregious conduct of the party's attorney may be imputed to the party in order to justify dismissal, and gives examples such as the party's failure to act as a reasonable and prudent person in engaging an attorney or in inquiring about the proceedings. *Id.* at 469–70 n.11, 592 N.W.2d at 634 (citing *Charolais Breeding Ranches, Ltd. v. Wiegel*, 92 Wis. 2d 498, 285 N.W.2d 720 (1979)). In remanding because this court had not made a finding of egregious conduct by the attorney before dismissing the appeal, the *Smythe* court stated, "There is no evidence in the record of [the client's] complicity in or knowledge of the delay in filing the brief nor his involvement in any of [the attorney's] previous motions for extension." *Id.* at 471, 592 N.W.2d at 634.

"inexcusable neglect"—not conduct of a reasonably prudent person. *Id.* at 513, 285 N.W.2d at 727; *see also Wagner v. Springaire Corp.*, 50 Wis. 2d 212, 184 N.W.2d 88 (1971). We therefore understand from *Smythe* that, whether the attorney's conduct is egregious or negligent, the trial court is to consider the client's failure to act in a reasonable and prudent manner, and the client's knowledge of or complicity in that conduct, in deciding whether to impute the attorney's conduct to the client for purposes of a sanction. On remand the trial court will have the opportunity to decide whether to impute Lunder's conduct to Garfoot for purposes of sanctions in light of *Smythe*, as well as prior case law.

Second, Lunder argues that the court erred in imputing to her the actions of Balch (Associated Engineers) because he was an independent contractor and, therefore, the court could not attribute the acts of Balch or the technician to Garfoot. We agree with the respondents that the distinction between independent contractor and master/servant for liability purposes does not determine the outcome of the motion for sanctions. We also agree with the respondents that the record supports the trial court's determination that Lunder retained Balch to further Garfoot's interests in litigation, and Balch and the technician he retained were acting in furtherance of those interests.

Third, Lunder contends that the court erred in not making a finding that Balch was either negligent or that he "intentionally engaged in destructive testing." We conclude it is not necessary that the conduct of each of the persons acting on Garfoot's behalf be either negligent or egregious. Rather it is necessary that the trial court first find that either negligent or egregious conduct resulted in the destruction of the evidence, and

second, that the court properly exercise its discretion by applying the applicable law to the facts of record in deciding whether to attribute that conduct to Garfoot.

Finally, we address the impact of the destructive testing by the technician on the ability of the respondents to present a defense, because this too may be an issue on remand. The appellants contend that under *Milwaukee Constructors II* and *Sentry*, a trial court may not impose the sanction of dismissal, unless it finds, in addition to egregious conduct, that the destruction of evidence gives an unfair advantage to the party destroying the evidence. They argue that the record does not support such a finding, and point to the court's comments recognizing that Garfoot, as well as the respondents, was deprived of the opportunity to conclusively answer the question whether there was a leak at one of the two joints in question. The appellants assert that any conclusion that the respondents were prejudiced is based only on speculation—that, had no disconnection and reconnection occurred, the evidence would show there was no leak. The appellants also point out that experts on both sides were able to come to conclusions about the existence of a leak, based on the damage that occurred when the gas exploded, and this physical evidence was not disrupted. These facts, the appellants contend, distinguish this case from *Sentry*, because Sentry was able to conduct testing to support its claim while the defendant could do no testing on the discarded refrigerator.

The respondents reply that the record shows they have been deprived of the opportunity to present an adequate defense. Mount Horeb points out that its expert determined that if the two joints had not been disrupted, proper testing would have conclusively established there were no leaks in those joints. All

729

Temperature adds that, since it touched only one of the two joints, it is deprived of the opportunity to determine which joint, if either, had a leak, and the jury will be asked to speculate as to which, if either, did.

We do not accept the appellants' implicit assumption that there is no prejudice to the opposing party unless the party responsible for the destruction of evidence gains an unfair advantage over the opponent. That is one form of prejudice to the opposing party, but not the only one.

We also do not agree with the appellants that prejudice to the opposing party is always necessary for the sanction of dismissal when there is egregious conduct. Although we directed the trial court in *Milwaukee Constructors II* to consider "how the absence of any relevant documents impairs the defendants' ability to establish their pertinent claims or defenses," *Milwaukee Constructors II*, 177 Wis. 2d at 538, 502 N.W.2d at 887, we gave this instruction in the context of our conclusion that the record did not support a determination of egregious conduct. *See id.* at 535, 502 N.W.2d at 885. In *Sentry* we affirmed the trial court's finding that the defendant's ability to present a defense was impaired. *See Sentry*, 196 Wis. 2d at 919, 539 N.W.2d at 916. In neither case did we expressly or implicitly hold that, if the trial court determines a party destroyed evidence with a conscious attempt to affect the outcome of the litigation or a flagrant knowing disregard of the judicial process, the court does not have the discretion to impose a sanction of dismissal unless those acts resulted in prejudice to the opposing party.

We decline to impose such a requirement. In *Johnson* the supreme court rejected the plaintiff's proposal that the court adopt a per se rule that the case of a party who did not comply with court orders could not be

dismissed unless the opposing party had been "irreparably prejudiced by the delay." *Johnson*, 162 Wis. 2d at 281, 470 N.W.2d at 867. The court concluded that the trial court's exercise of discretion should not be restricted in this way because the judicial system was also harmed by the disregard of court orders, and in appropriate cases the severe sanction of dismissal should be available not merely to penalize those engaging in the conduct, but also to deter others. *Id.* at 282–83, 470 N.W.2d at 867. This reasoning applies as well to sanctions for the destruction of evidence. We conclude that in the appropriate case, after finding that a party, or persons acting on the party's behalf, has destroyed evidence with a conscious attempt to affect the outcome of the litigation or a flagrant knowing disregard of the judicial process, the trial court does have the discretion to impose a sanction of dismissal even though the destruction of the evidence has not impaired the opposing party's ability to present a claim or defense.

The trial court in this case did find that as a result of the destructive testing the defense cannot adequately defend against the claims of negligent installation and inspection. However, we are uncertain of the trial court's basis for this finding. Apparently it did not find that the destroyed evidence would have shown there was no leak, because it spoke in conditional terms in describing what the evidence would show.[11] And certain of the court's comments indicate it viewed Garfoot and the respondents as equally harmed by the inability to conclusively determine whether there was or was not a leak. We agree with the appel-

---

[11] The trial court stated that Mt. Horeb was denied "the ability to have the absolute evidence, *if it existed*, that no leak was in that system." (Emphasis added.)

lants that this is not a situation in which one party has gathered evidence which the other party did not have, and will never have, the opportunity to do. *See Sentry*, 196 Wis. 2d at 911–13, 539 N.W.2d at 913–14. However, we cannot conclude as a matter of law that, solely for this reason, no sanction is appropriate or the defense was not prejudiced in any way. When the trial court considers the nature of the conduct that resulted in destruction of evidence on remand, it should also revisit the issue of the impact that conduct had on the respondents' ability to present a defense and make specific findings on that issue.

## SUMMARY

In summary, we reverse and remand to the trial court to decide, consistent with this opinion, whether a sanction is appropriate and, if so, what sanction. In reaching that decision, the trial court should determine whose conduct resulted in the destruction of evidence; whether the conduct of that actor or actors was egregious; whether the conduct was negligent; whether the conduct should be imputed to Garfoot; and if and how the absence of the destroyed evidence impairs the ability of all parties to present their claims or defenses. This is not an exhaustive list. The trial court may, of course, consider all factors relevant to the proper exercise of its discretion.

*By the Court.*—Judgment and order reversed and cause remanded with directions.