Michael J. SCHAEFER and Deborah Schaefer, Plaintiffs-
Appellants,

v.

NORTHERN ASSURANCE COMPANY OF AMERICA,
Defendant-Respondent,

Dr. Irene BRZEZINSKI and American Family Mutual
Insurance Company, Defendants.

Court of Appeals

*No. 92–1419. Submitted on briefs July 15, 1993.—Decided
February 1, 1994.*

(Also reported in 513 N.W.2d 615.)

148

For the plaintiffs-appellants the cause was submitted on the briefs of *Starobin & Associates, S.C.*, with Aaron Starobin, of Mequon, and *Fraker & Kaplan, S.C.*, with *Donald Roy Fraker*, of Mequon.

For defendant-respondent Northern Assurance Company of America the cause was submitted on the briefs of *Piette & Jacobson, S.C.*, with *Ronald L. Piette* and *Michael T. Steber*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   Michael J. Schaefer and his wife, Deborah Schaefer, appeal from a summary judgment dismissing their action and granting Northern Assurance Company of America its attorney fees in the amount of $8,804.35 and statutory costs of $474.50. We conclude that the trial court, under the circumstances, properly dismissed the action on the basis of non-cooperation. We further conclude that the trial court possessed and properly exercised its inherent authority to assess attorney fees as a sanction. Thus, we affirm.

On June 5, 1982, Michael J. Schaefer sustained injuries when a pickup truck in which he was a passenger left the road and struck a rock. On January 11, 1984, Schaefer filed suit against Dr. Irene Brzezinski, who owned the pickup truck, and Northern Assurance, which had issued liability insurance on the truck. In his complaint, Schaefer alleged that Brzezinski's son, Jerzy, had negligently operated the truck at a high rate of speed, and caused it to leave the road and crash. Schaefer repeated these allegations in an amended complaint filed May 8, 1984.[1] Northern Assurance filed answers to these complaints.

The case was scheduled for a jury trial on June 4, 1985. On the day of trial, however, Schaefer's counsel requested leave to withdraw, citing ethical concerns regarding subornation of perjury. After an *ex parte* con-

---

[1] Schaefer's amended complaint also named Jerzy Brzezinski and his automobile insurer, American Family Mutual Insurance Company. Jerzy Brzezinski was subsequently dismissed from the action for reasons unrelated to the merits of this appeal. American Family and Schaefer reached a settlement agreement prior to the entry of judgment by the trial court. Thus, neither Jerzy Brzezinski nor American Family are party to this appeal.

ference, the trial court[2] granted counsel leave to withdraw and recused itself from all further proceedings.

Following further discovery, Northern Assurance filed an amended answer in March 1988. Northern Assurance alleged that Schaefer, Dr. Irene Brzezinski and Jerzy Brzezinski had engaged in collusion to misrepresent the circumstances of the accident and the identity of the driver of the vehicle. Northern Assurance asserted the defense of non-cooperation and argued that such failure to cooperate should result in the denial of insurance coverage. In July 1988, Northern Assurance moved for summary judgment, alleging that it was entitled to judgment as a matter of law due to the insured's failure to cooperate and the collusion between Irene and Jerzy Brzezinski and the plaintiff, Michael Schaefer.

Schaefer opposed Northern Assurance's motion for summary judgment. In addition, Schaefer moved to amend his complaint to include the allegation that the driver of the vehicle at the time of the accident was Elizabeth Littleton, rather than Jerzy Brzezinski as had been previously alleged, and that Ms. Littleton had operated the vehicle with the consent of Jerzy and Irene Brzezinski.

The trial court[3] denied Northern Assurance's motion for summary judgment and granted Schaefer's motion to amend its complaint, but concluded that Schaefer should pay the additional expenses that the defendants incurred due to the falsehood contained in Schaefer's earlier pleadings. Northern Assurance submitted to the trial court an itemized list of the amount

---

[2] Judge Elliot Walstead presided over this proceeding.

[3] Judge Russell W. Stamper presided over these proceedings.

requested and argued that Schaefer's misrepresentation had generated expenses and attorney fees in excess of $11,000. Following a hearing, the trial court determined that $8,804 in expenses and attorney fees were attributable to Schaefer's misrepresentation.

In January 1992, Northern Assurance again moved for summary judgment, arguing that Schaefer had filed false pleadings and that the collusion between the insured and Schaefer should result in a discharge of Northern Assurance from any duty under the insurance contract, pursuant to § 632.34, STATS. Northern Assurance attached portions of Schaefer's most recent deposition and his affidavit, in which Schaefer admitted that he, Jerzy Brzezinski and Irene Brzezinski had agreed to misrepresent the circumstances of the accident and the identity of the driver to ensure that the accident would be covered by an insurance policy.[4]

The trial court[5] granted Northern Assurance's motion for summary judgment and dismissed the complaint. It reasoned that the conspiracy between Schaefer, Jerzy Brzezinski, and Elizabeth Littleton, the driver of the pickup truck, relieved Northern Assurance of its duty to indemnify or defend any party in the case due to the non-cooperation clause in the insurance contract and pursuant to § 632.34, STATS. The trial court also entered judgment against Schaefer in the amount of $8,804 plus statutory costs, consistent with the trial court's previous decision to assess expenses and attorney fees for Schaefer's misrepresentation.

---

[4] In a deposition, Irene Brzezinski categorically denied that she was part of a conspiracy to misrepresent the identity of the driver.

[5] Judge John C. Ahlgrimm presided over these proceedings.

On appeal, Schaefer argues that the trial court erroneously dismissed his complaint, and erroneously ordered the judgment for attorney fees against him.

## FAILURE TO COOPERATE

Northern Assurance's defense of failure to cooperate is based upon the following factual scenario. As previously stated, in his original and amended complaints, Schaefer alleged that Jerzy Brzezinski was the driver of the truck at the time of the accident. More than four years after commencement of the lawsuit, Schaefer filed an amended complaint in which he alleged that Elizabeth Littleton was the driver. During those four years, the following events transpired.

In a deposition taken January 17, 1985, Schaefer swore that, at the time of the accident, he was riding in the bed of the pickup truck, Jerzy was driving, and Glen Gipp, a friend, was a passenger in the cab of the truck. Subsequently, in a deposition taken August 26, 1985, Schaefer again testified to that version of the accident. Schaefer also denied that he had ever told anyone that someone other than Jerzy had been the driver.

Robert Ward, one of Schaefer's several attorneys, in a deposition of May 13, 1986, swore that he was Schaefer's attorney at the time that the case had originally been set for trial, June 4, 1985. Ward explained that on the day of trial, Schaefer told him that Jerzy's sister-in-law, and not Jerzy, had been driving the pickup at the time of the accident. Schaefer told Ward that he intended to "try the lawsuit the way it was presented." When Ward told Schaefer that he would not proceed to trial, Schaefer said "do what you have to do." Ward then withdrew from the case.

In a deposition of September 18, 1987, Paula Mae Littleton[6] testified as to her recollection of the events leading up to the accident. She had observed her sister Elizabeth Littleton, a woman named Linda, Glen Gipp and Schaefer drive away in the pickup truck. She testified that Elizabeth drove, Linda sat in the cab of the truck, and the two men rode in the bed of the truck.[7] Although Paula Littleton did not witness the accident, she drove Schaefer to the hospital following the accident. Paula stated that about a week or two later she overheard Jerzy and Irene Brzezinski discuss the need to establish that Jerzy had been the driver of the truck. Paula also stated that "[t]hey had [Elizabeth Littleton] to the point that she was afraid to say that she was driving."

In a deposition of May 3, 1988, Elizabeth Littleton testified that she had been the driver of the truck at the time of the accident and that Linda had sat next to her and that Gipp and Schaefer had ridden in the bed of the truck. She further testified that she had lost control of the truck when Schaefer leaned through a back window, pulled her face toward him and tried to kiss her. Later in the evening, on the date of the accident, a discussion occurred in which Jerzy Brzezinski stated that he would claim to have been driving the truck at the time of the accident. Elizabeth Littleton, Schaefer, Linda, Glen Gipp, and Paula Littleton were all present during this discussion. In her deposition, Elizabeth explained that it was "understood" that she was to

---

[6] Paula Littleton was married to Jerzy Brzezinski at the time of the accident.

[7] In Paula's deposition of October 22, 1984, she had testified, that, to her knowledge, Jerzy had driven the truck at the time of the accident.

"shut [her] mouth" about the true circumstances of the accident.

Finally, in a deposition of July 26, 1988, Schaefer changed his story and swore that Elizabeth Littleton had been driving the truck, that a woman named Linda was a passenger, and that he and Gipp had been riding in the bed of the truck. He also stated that Irene Brzezinski had invited him and Gipp to her apartment two days after the accident, where she told them to say that Jerzy had been the driver because Elizabeth Littleton allegedly had no operator's license. Schaefer subsequently signed an affidavit on October 8, 1991, in which he recounted the events of the meeting with Irene Brzezinski and, further, implicated two attorneys in the conspiracy.

On these facts, the trial court found that Northern Assurance had demonstrated that its insured had failed to cooperate, and that § 632.34, STATS., permitted Northern Assurance to avoid liability in the suit brought by Schaefer. Section 632.34, STATS., provides, in relevant part:

> **Defense of noncooperation.** If a policy of automobile liability insurance provides a defense to the insurer for lack of cooperation on the part of the insured, the defense is not effective against a 3rd person making a claim against the insurer unless there was collusion between the 3rd person and the insured or unless the claimant was a passenger in or on the insured vehicle.

Schaefer's first attack on the trial court's decision is that the policy that Northern Assurance issued to Irene Brzezinski did not contain a defense for lack of cooperation as anticipated by the statute. We reject this argument, which, incidentally, is unsupported by

reference to authority. The policy clearly provides Northern with a non-cooperation defense. The following language follows the subtitle "Duties After an Accident or Loss":

> A person seeking coverage must:
>
> (1)   Cooperate with us in the investigation, settlement or defense of any claim or suit.

The application of an unambiguous contract to established facts presents this court with a legal issue which we decide independently of the trial court. *Thompson v. State Farm Mut. Auto. Ins. Co.,* 161 Wis. 2d 450, 455-56, 468 N.W.2d 432, 434 (1991). We conclude that this provision unambiguously provides Northern Assurance with a non-cooperation defense which, in turn, invokes the provisions of § 632.34, STATS.

Schaefer's second attack is based upon his claim that summary judgment was improper because a material issue of fact existed regarding the issue of collusion. Schaefer argues that Irene Brzezinski, to whom the policy was issued, continues to deny that she had any part in the plan to provide false information regarding the accident. Schaefer further argues that Jerzy Brzezinski's complicity is immaterial because he was not the driver, and thus, could not be considered an insured under the policy. Schaefer further asserts that, as to Elizabeth Littleton, evidence of her complicity is amorphous because her only sworn testimony was truthful.

We reject this argument. We are satisfied from the summary judgment documents that the evidentiary facts, including Schaefer's own admissions, admit no other conclusion than his continuing collusive endeavor. Astonishingly, in his affidavit, drafted after

he admitted that Elizabeth was the driver, Schaefer reached out to inculpate two lawyers in the conspiracy as well. Schaefer, in his own sworn deposition, conceded that he colluded with Irene and Jerzy Brzezinski, and Elizabeth Littleton. We conclude that the facts of this case fall clearly within the ambit of collusive endeavors envisioned by the non-cooperation clause in the policy and by § 632.34, STATS.

Schaefer's next argument is that the trial court failed to properly synthesize the common law and § 632.34, STATS., because the trial court failed to require Northern Assurance to show that the collusion was material or prejudicial. Schaefer argues that the common law principles of the non-cooperation defense require that in order to assert the defense of non-cooperation against a third party, an insurance company must show that it was materially harmed or prejudiced by the non-cooperation. *See, e.g., Dietz v. Hardware Dealers Mut. Fire Ins. Co.*, 88 Wis. 2d 496, 503, 276 N.W.2d 808, 812 (1979); *Simonds v. Bouton*, 87 Wis. 2d 302, 308, 274 N.W.2d 666, 669 (1979).

Northern Assurance counters with the argument that the cases that deal with the common law requirement of prejudice predate the current statute. Northern Assurance explains further that § 204.30(7), STATS., the predecessor to § 632.34, STATS., was the first legislative action with respect to non-cooperation clauses. That statute provided:

> The cancellation of or the failure to renew any policy for lack of cooperation on the part of the insured is not effective against a third party or parties injured while the policy was in effect unless the insurer can show actual collusion between the 3rd party or par-

ties and the insured *resulting in actual financial prejudice* to the insurance company.

(Emphasis added). Nonetheless, Northern Assurance continues, when the statute was recreated and renumbered in 1975,[8] the legislature dropped the prejudice component. That statute, § 632.34(8), STATS. (1975), like the present statute, provided that a defense of lack of cooperation in an automobile liability insurance policy could only be used against a third party if the third party had colluded with the insured or was a passenger in the insured vehicle. Northern Assurance concludes, and we agree, that by deleting the requirement that the insurance company show actual prejudice from the statute, the legislature intended that prejudice need no longer be a necessary component to the defense of lack of cooperation. *Cf. Kensington Dev. Corp. v. Israel*, 139 Wis. 2d 159, 167, 407 N.W.2d 269, 273 (Ct. App. 1987) ("In cases of conflict between legislation and common law, legislation will govern because it is the latest expression of the law."), *aff'd on other grounds*, 142 Wis. 2d 894, 419 N.W.2d 241 (1988). Thus, we reject Schaefer's claim that the trial court should have required a showing of prejudice on the part of Northern Assurance.

Schaefer's final challenge to the trial court's dismissal for failure to cooperate is that other provisions found within Northern Assurance's policy require Northern Assurance prove that it relied upon the misrepresentation and that the misrepresentation was material. Schaefer points to the following provision in the policy:

---

[8] Section 632.34(8), STATS., was created by ch. 375, Laws of 1975.

REPRESENTATIONS

No oral or written statement or representation made by you or on your behalf and no breach of an affirmative warranty affects our obligations under this policy:

1. Unless we rely on it and it is either material or is made with intent to deceive; or

2. Unless the fact misrepresented or falsely warranted contributes to the loss.

This contractual language, however, merely tracks the statutory language of § 631.11(2), STATS., which this court has held applies only to misrepresentations made in the negotiation or application for insurance. *See Tempelis v. Aetna Casualty and Surety Co.*, 164 Wis. 2d 17, 27, 473 N.W.2d 549, 553 (Ct. App. 1991), *aff'd on other grounds*, 169 Wis. 2d 1, 485 N.W.2d 217 (1992). Thus, we conclude that the "representations" provision in the contract is inapplicable to the present situation, and that it neither invalidates the non-cooperation defense nor imposes additional requirements of reliance and materiality.

## INHERENT POWER TO ENTER JUDGMENT FOR ATTORNEY FEES

Relying on its "inherent power," the trial court conducted a hearing to determine the amount of expenses and attorney fees Northern Assurance incurred as a result of Schaefer's misrepresentations, to be paid as a condition to allowing Schaefer to file an amended complaint. When the trial court subsequently entered summary judgment dismissing the action, it included in the judgment an assessment of attorney fees in the amount of $8,804.35. Schaefer argues that the court lacked authority to order that attorney fees be paid. He

161

also questions the trial court's factual findings as to the amount of the attorney fees to be awarded.

In its oral decision, the trial court discussed certain statutes that related to the issue of sanctions and attorney fees,[9] but ultimately focused in on its "inherent authority" to permit its action. In its order of dismissal it referenced Schaefer's collusion and conspiracy. We conclude that the existence of collusion and conspiracy also applies to assessment of attorney fees incurred by the innocent party—here, the insurer.

■

A trial court is not limited only to its statutory authority to sanction parties, for it also has "inherent authority to sanction parties for failure to prosecute, failure to comply with procedural statutes or rules, and for failure to obey court orders." *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273-74, 470 N.W.2d 859, 863 (1991). In discussing the trial court's inherent powers, the Wisconsin Supreme Court has stated:

> The general control of the judicial business before it is essential to the court if it is to function. "Every court has inherent power, exercisable in its sound discretion, consistent within the constitution and

[9] The trial court discussed generally its authority to impose sanctions under § 805.03, STATS. (failure to prosecute or comply with procedural statutes), and § 814.025, STATS. (costs upon frivolous claims and counterclaims). The trial court concluded, however, that the present case did not fit squarely within either of those statutory provisions. Schaefer points out that the present version of § 802.05(1)(a), STATS. (signing of pleadings, motions and other papers; sanctions), is only applicable to actions commenced on or after April 21, 1988. *See* Historical and Statutory Notes, 1987, Wis. Stat. Ann. § 802.05 (West Supp. 1993).

statutes, to control disposition of causes on its docket with economy of time and effort."

*Latham v. Casey & King Corp.*, 23 Wis. 2d 311, 314, 127 N.W.2d 225, 226 (1964) (citation omitted). While *Latham* and *Johnson* discussed the trial court's inherent authority to dismiss an action as a sanction, we conclude that the supreme court's discussion is equally applicable to a trial court's ability to assess attorney fees as a sanction.

We review the trial court's decision to assess attorney fees for an erroneous exercise of discretion. *See id.* The exercise of discretion entails the application of the correct rule of law to relevant facts of record to reach a reasonable conclusion. *Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 204, 496 N.W.2d 57, 62 (1993).

We find no erroneous exercise of discretion in the present case. By his own admission, Schaefer became party to a scheme to misrepresent the identity of the driver shortly after the accident. He intentionally filed two false complaints, testified falsely in two depositions and on the day of trial, June 4, 1985, informed his lawyer of the falsehood. After Schaefer persisted in his mendacity, the lawyer refused to go to trial, obtained a continuance and withdrew from the case. Only after other members of the conspiracy came forth with the truth did Schaefer recant. Even then he attempted to foist culpability upon another lawyer who he claims advised him. The case has been in the court system for over nine years due in large part to Schaefer's misrepresentations, and the subsequent search for the truth. Judicial integrity and efficient processing of litigation are at stake. We reject Schaefer's claim that the trial court misused its discretion in assessing against

Schaefer that part of Northern's attorney fees that related to falsehood-created delays.

In addition, we reject Schaefer's claim that the trial court erroneously determined the amount of attorney fees attributable to his falsehoods. The court conducted a hearing in which Northern Assurance's attorney testified and was cross-examined as to the necessity of certain fees. The trial court heard Schaefer's objections to three instances of Northern's work. The trial court found that the bulk of Northern's pretrial preparation was vitiated by the falsehood. We are bound by a trial court's fact finding which is based on credible evidence. Section 805.17(2), STATS. The trial court conducted an extensive hearing in which it heard testimony of Northern Assurance's attorney, and went through the requested attorney fees line by line to determine which of the items were wholly or partially attributable to Schaefer's wrongdoing. The trial court concluded that ninety percent of the pretrial preparation was useless. This percentage and the reasonableness of the fees were the subject of testimony by Northern's attorney which the trial court was entitled to find credible.

Schaefer also argues that two depositions taken by Northern Assurance were not due to his misrepresentations—in particular, a second deposition of Jerzy Brzezinski's ex-wife, Paula Littleton, and a deposition of Elizabeth T. Littleton, who was not the same Elizabeth Littleton as is alleged to be the driver of the truck. The trial court attributed Paula Littleton's second deposition to the fact that she was one of the conspirators involved in the falsified report of the accident. In her first deposition, taken while she was married to Jerzy

Brzezinski, Paula Littleton denied having ever heard that someone other than Jerzy had driven the truck at the time of the accident. In the second deposition, Paula Littleton admitted that she had not been truthful in her first deposition. We find no error in attributing this second deposition to Schaefer's participation in the scheme to misrepresent the circumstances of the accident. Paula Littleton was redeposed in Northern Assurance's search for the truth.

With regard to Schaefer's next claim, Northern Assurance had deposed Elizabeth T. Littleton under the erroneous belief that she had been the driver of the truck.[10] The trial court concluded that, given the circumstances, Northern Assurance had arranged the deposition based upon the best information then available about the identity of the driver of the truck. To say that Schaefer was not forthcoming with the precise name and address of the driver of the vehicle is a gross understatement. We conclude that the trial court's finding, that this deposition was caused by Schaefer's falsifications, is supported by the evidence. We conclude that the court exercised proper discretion in determining the amount of attorney fees to be assessed against Schaefer.

*By the Court.*—Judgment affirmed.

[10] Elizabeth Littleton, who allegedly drove the truck at the time of the accident, was the sister-in-law of Elizabeth T. Littleton.