**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 8, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2023AP2218**

Cir. Ct. No.  **2022CV51**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

KRISTA SCUDDER,

   PLAINTIFF-APPELLANT,

V.

CONCORDIA UNIVERSITY, INC.,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge.  *Reversed and cause remanded with instructions*.

Before Neubauer, Grogan and Lazar, JJ.

¶1     LAZAR, J.  Krista Scudder challenges the dismissal of her civil lawsuit against Concordia University, Inc. due to the egregious conduct of her counsel, who failed to properly prosecute the case while withholding pertinent information from her and misleading her about his representation.  She appeals the

circuit court's judgment memorializing an order denying her motion for relief from sanctions and to amend the scheduling order and granting Concordia's motion for summary judgment dismissing the case with prejudice. Scudder asserts that the court erroneously exercised its discretion when it attributed her counsel's undeniable violation of the scheduling order and discovery rules to her despite her lack of participation in, much less knowledge of, that conduct. She further asserts that the court failed to consider whether she was aware of the egregious conduct resulting in scheduling order and discovery sanctions. Finally, Scudder contends that the court's sanction prohibiting her from presenting her claims was, in essence, an improper sanction of dismissal.

¶2     We agree and reverse, vacating the judgment and remanding the matter to the circuit court to amend the scheduling order and permit Scudder to resume her case on the merits.

## BACKGROUND

¶3     An examination of the precise dates of events in the circuit court case giving rise to this appeal is of utmost importance. Accordingly, they are set forth here in detail.[1]  Scudder, believing she had a claim[2] against Concordia,

---

[1] The allegations in Scudder's affidavit were uncontested; Concordia presented no evidence to the contrary. In a motion for relief from judgment under WIS. STAT. § 806.07(1)(h) (2021-22), a court should "examine the allegations accompanying the motion with the assumption that all assertions contained therein are true." *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶10, 282 Wis. 2d 46, 698 N.W.2d 610.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The substance of Scudder's claims against Concordia for religious discrimination, breach of contract, and misrepresentation with respect to Concordia's nursing education program are not relevant to the issue in this appeal.

gathered all the information she could find and sought an attorney with experience in litigation regarding school law and students' rights. She retained counsel based on his advertisements listing his expertise in these areas. Having no prior involvement in any civil litigation, Scudder trusted her counsel ("Counsel") to zealously advocate on her behalf.

¶4 Counsel filed Scudder's complaint against Concordia on March 4, 2022, in Ozaukee County. Almost immediately, Concordia sought to remove the matter to federal court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 on the ground that federal law was "an essential element" of her religious discrimination claim. On October 6, 2022, the federal district court granted Concordia's motion to dismiss the federal claim[3] on the merits, but then "relinquish[ed] supplemental jurisdiction over the remaining state-law claims" and remanded them back to the state circuit court. Ozaukee County resumed jurisdiction.

¶5 A scheduling conference was held before the circuit court on November 16, 2022. Counsel attended, but Scudder was not aware of this conference and did not attend. An electronically signed scheduling order dated that same date was electronically distributed to counsel for both parties. That scheduling order set the dates for various litigation events, including dates for the exchange of witness and expert lists. The order stated (in bold) that "Persons not enumerated shall not be permitted to testify unless good cause be shown." Discovery was to be completed by July 14, 2023. Counsel never provided Scudder with a copy of the scheduling order, apprised her of the deadlines therein,

---

[3] Through Counsel, Scudder had raised a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a-2000a-6, alleging that Concordia had discriminated against her based upon religion.

or asked Scudder for the names of her witnesses. She was "generally unaware of specific court deadlines."

¶6 Pursuant to the scheduling order—but unbeknownst to her—Scudder was to provide her list of witnesses, including experts, to Concordia and the circuit court by January 30, 2023. On January 19, 2023, when she emailed Counsel to ask what information she should provide to her witnesses, Counsel did not request any witness names in response. He gave Scudder the impression that "Concordia was dragging this case out and that any delays were not his doing." In a telephone call with Counsel that same month, Scudder agreed to mediate her case. To her knowledge, mediation was never scheduled. Counsel did not meet the January 30 deadline to provide Scudder's witness list.

¶7 Concordia timely filed its Preliminary Lay Witness List and served discovery requests upon Counsel (not Scudder) on February 14, 2023, which included an interrogatory seeking an itemization of claimed damages and supporting calculations. On March 21, 2023 (the day after discovery responses were due and about two months after Scudder's witness list was due), Concordia emailed Counsel to inquire about the missing documents. Scudder was not copied on the email, nor did Counsel forward the email or communicate with her about the missed deadlines at any point.

¶8 Three days later, on March 24, Counsel emailed a response advising that he had experienced some health issues[4] and had not noticed the discovery requests; he indicated that he would get Concordia what it needed by the end of

---

[4] We make no conclusions as to whether Counsel's ill health or family emergencies could be considered a justifiable basis for his delays and conduct.

the next week or a few days later. Counsel did not copy Scudder on this response, nor did he tell her that he had promised to submit the late documents.

¶9 Despite his promise, Counsel did not provide responses or a witness list by his own proposed deadline. Concordia reached out again on April 11, and Counsel again promised to send the missing material before the week ended (i.e., by April 14, 2023). Again, Scudder was never informed of this email exchange.

¶10 April 14 came and went with no response by Counsel. Three days later, Counsel emailed Concordia that he and Scudder had planned to go through the final responses on April 14, but there had been a "family emergency." He added that he and Scudder had "a time worked out" on April 18 "to do final sign off." Again, Scudder was unaware of this email exchange.

¶11 Between January and April 2023, Scudder began to grow concerned that Counsel was not responding to her and was not giving the case the attention it needed. On April 18, 2023, she finally spoke with Counsel by telephone. "[H]e apologized for not giving [her] case enough time" and "reassured [her] that he would be able to continue as [her] attorney and properly litigate [her] case." He brushed aside her offer to get a new attorney and "insisted on continuing." He mentioned that he needed to get some information to Concordia, but did not say it was discovery responses and did not provide Scudder with the requests or a draft of his proposed responses. Between April 24 and 29, 2023, Scudder emailed information to Counsel as requested. The email Scudder sent on April 29, 2023, was the last communication she had with Counsel; he did not return the phone calls she made to him in May, June, and July.

¶12 Counsel did not provide anything to Concordia until April 28, 2023, when he finally provided unverified discovery responses after multiple warnings

from Concordia that it would file a motion to compel on that date.[5] These responses were incomplete, and Concordia immediately emailed Counsel that day and on May 8, 2023, to no avail. When Counsel responded by email eight days later, he indicated that "several pages were cut off when [he] merged the [documents]" and that he would provide those pages (which included discovery answers and Scudder's witness list) when he returned from a trip.

¶13 Concordia emailed back that day (May 16, 2023) with a notice of deposition for Scudder for June 8 and to complain that a video file sent by Counsel was cut off. On May 19, Counsel emailed that he was still out of town but would provide the missing materials by May 21 and would check with Scudder about the deposition date. Scudder was never aware a deposition had been scheduled until the end of July (after she independently obtained documents from the court file). No one on behalf of Scudder appeared for this deposition.

¶14 Again, Counsel did not provide the missing materials, and follow-up emails and telephone calls from Concordia from May 22 through May 26 went unanswered.

¶15 On May 31, 2023, Concordia filed a Motion for Sanctions for Failure to Respond to Discovery Requests and Non-Compliance with Scheduling Order. Concordia sought an order prohibiting Scudder "from introducing damages evidence" as well as its expenses and attorney's fees incurred in bringing the

---

[5] No evidence in the Record suggests that Scudder had any personal knowledge of the discovery requests or participation in preparing responses to them. Scudder's attestation that she was not aware of her discovery obligations is supported by the fact that—as Concordia complains—Scudder herself had not signed and verified the interrogatory responses.

motion. As an alternative, Concordia sought an order requiring Scudder to file and serve the witness list and missing discovery as soon as possible.

¶16 The circuit court held a hearing on Concordia's motion on June 14, 2023. Scudder, who was never advised of the hearing, did not appear, and neither did Counsel. The court held that it would "grant [Concordia's] request" and added, sua sponte, that the proposed order should also preclude Scudder from calling any witnesses to testify. The court asked Concordia to amend its proposed order to include this additional sanction and concluded by saying that it "assume[d] you'll be filing a motion after my ruling." The court signed the revised order on June 23, 2023. In addition, the court subsequently ordered Scudder to personally pay Concordia reasonable litigation expenses of $5,129.06 by July 31, 2023.

¶17 After Counsel repeatedly failed to return her calls from May through July 2023, Scudder grew "increasingly worried" about her case and asked an attorney friend for advice and help finding a new attorney. When she checked on Wisconsin CCAP[6] on July 20, 2023, upon advice of that friend, she learned that sanctions had been ordered in her case. On July 24, Scudder requested copies of the filings related to the sanctions from the circuit court and then learned for the first time that she had been personally sanctioned. Two days later, Scudder's new counsel filed a notice of appearance, and nine days later, on August 4, 2023, Scudder's new counsel filed Scudder's Motion for Relief from Sanctions (with

---

[6] "CCAP is a[n internet accessible] case management system provided by Wisconsin Circuit Court Access program." **State v. Bonds**, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133.

respect to both the bar on presenting damage evidence and witness testimony as well as the fine) and to Amend Scheduling Order.

¶18    On August 14, 2023, Concordia filed a Motion for Summary Judgment on the grounds that Scudder "has no admissible evidence that she suffered damages" because she is unable to offer any such evidence or call any witnesses to support her claim.

¶19    Both motions were set for hearing and argument on September 28, 2023.  This time, both Scudder and her new counsel appeared.  Scudder's new counsel argued that she was a blameless participant in the egregious conduct of her prior counsel and that the circuit court's sanctions order was "tantamount to a dismissal because those sanctions are being used as the sole basis for the summary judgment motion which will dismiss the case."  He contended it was really a "two-step process" by which Scudder's case in its entirety was dismissed for her counsel's failure to comply with the scheduling order and respond to discovery requests.  Although the court remarked that it "did not dismiss [Scudder's case] as a sanction," Concordia acknowledged "in all candor" that the motion for summary judgment had to be considered "in the context of the sanctions motion."

¶20    The circuit court considered whether "Scudder [was] really blameless" and listed why, under "a reasonable and prudent person" standard, she *was* to blame:  (1) she had concerns in April but only "offered" to get new counsel, thereby "keep[ing] her head in the sand"; (2) she knew "something[ was] not going on quite right and she still wait[ed]" from January to April; and (3) she did nothing aside from making numerous calls from May to July.  The court summarized its ruling on the motion for relief:

> Now, you might think that three months isn't long, but I think it's a long period of time to be waiting for an attorney to respond to my phone calls. And I think a reasonable person, and I'll find a reasonable person and prudent person would say wait a minute, this is way to[o] long[.] I've got to do something about this. It might be her first lawsuit, but then by that standard, any time a person files a lawsuit for the first time in their life they get a pass, that's what you're really asking for, and I can't see that in this case.

> Given the circumstances … the Court won't grant your request to lift the sanctions. Those will remain.

> Now, your argument is well, she shouldn't be personally responsible. That's not really a decision for this Court. She might have a cause of action so that she can recover anything, but she is responsible. Under my ruling she is responsible. So I'll deny that request as well.

¶21 Next, after Concordia succinctly argued that Scudder is "unable to offer proof of damages to meet the elements of her claim[s]," the circuit court found that "summary judgment is appropriate given the fact that [Scudder] would not be able to prove up any damages or proceed with the case without witnesses."

¶22 Following the hearing, the circuit court entered an order denying Scudder's motion and granting summary judgment in favor of Concordia. It also entered judgment awarding costs against Scudder and in favor of Concordia. Scudder appeals.

## STANDARD OF REVIEW

¶23 Circuit courts have inherent authority to exercise their discretion in determining whether to impose sanctions for scheduling order violations and other misconduct. *See* ***Schultz v. Sykes***, 2001 WI App 255, ¶10, 248 Wis. 2d 746, 638 N.W.2d 604; ***Schaefer v. Northern Assurance Co. of Am.***, 182 Wis. 2d 148, 162, 513 N.W.2d 615 (Ct. App. 1994); *see also* WIS. STAT. § 802.10(7) (authorizing sanctions for violation of a scheduling order). Discovery sanctions are also within

a circuit court's discretion. ***Teff v. Unity Health Plans Ins. Corp.***, 2003 WI App 115, ¶12, 265 Wis. 2d 703, 666 N.W.2d 38; ***B & B Invs. v. Mirro Corp.***, 147 Wis. 2d 675, 688, 434 N.W.2d 104 (Ct. App. 1988); *see also* WIS. STAT. § 804.12(2)(a) (authorizing sanctions for failure "to provide or permit discovery"). Thus, on review of orders for such sanctions, we look to whether the circuit court erroneously exercised its discretion. ***Mohns Inc. v. BMO Harris Bank Nat'l Assoc.***, 2021 WI 8, ¶33, 395 Wis. 2d 421, 954 N.W.2d 339; ***Industrial Roofing Servs., Inc. v. Marquardt***, 2007 WI 19, ¶¶39-41, 299 Wis. 2d 81, 726 N.W.2d 898.

¶24    "A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." ***Industrial Roofing***, 299 Wis. 2d 81, ¶41 (citation omitted). "The issue is not whether we, as an original matter, would have imposed the same sanction as the circuit court; it is whether the circuit court exceeded its discretion in imposing the sanction it did." ***Lee v. GEICO Indem. Co.***, 2009 WI App 168, ¶16, 321 Wis. 2d 698, 776 N.W.2d 622 (quoting ***Schultz***, 248 Wis. 2d 746, ¶8).

¶25    On the other hand, "[w]hen a circuit court applies the proper legal standard to the relevant facts but arrives at an unreasonable conclusion, it goes beyond the limits of discretion." ***Magyar v. Wisconsin Health Care Liab. Ins. Plan***, 211 Wis. 2d 296, 308, 564 N.W.2d 766 (1997). "Similarly, the application of an improper legal standard is an erroneous exercise of discretion." ***Id.*** at 308-09; ***State v. Hutnik***, 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

¶26    With respect to summary judgment motions, we review a circuit court's decision de novo. ***Racine County v. Oracular Milwaukee, Inc.***, 2010 WI

10

25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88. It is not necessary here to outline the oft-repeated appellate summary judgment analysis steps. *See Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987).

## DISCUSSION

¶27 "A court's discretionary sanction for violation of a scheduling order is generally well grounded when a scheduling conference has taken place at which all interested parties were present to be heard." *Hefty v. Strickhouser*, 2008 WI 96, ¶33, 312 Wis. 2d 530, 752 N.W.2d 820. Our supreme court has "repeatedly recognized that [a circuit] court has the discretion to dismiss the case as a sanction if the conduct of the moving party in failing to obey the court's scheduling order is egregious and there is no clear and justifiable excuse for the conduct." *Schneller v. Saint Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 310, 470 N.W.2d 873 (1991); *Trispel v. Haefer*, 89 Wis. 2d 725, 732-33, 279 N.W.2d 242 (1979). This must be done in accordance with appropriate standards.

¶28 Likewise, "[u]nder [WIS. STAT.] § 804.12(2)(a)3., a circuit court may enter a default judgment as a sanction for bad-faith discovery violations when the offending party has not proved it had a clear and justifiable excuse for its conduct." *Brandon Apparel Grp., Inc. v. Pearson Props., Ltd.*, 2001 WI App 205, ¶11, 247 Wis. 2d 521, 634 N.W.2d 544. That statute also allows for lesser sanctions for discovery violations, to be applied by a circuit court as is "just." *See* § 804.12(2)(a)1.-3.

¶29 Thus, while sanctions—and even the sanctions of dismissal or default judgment—are valid options to maintain a court's docket and preserve judicial time and economy, they must be proportionately and appropriately

11

applied. *See, e.g.*, **Schneller**, 162 Wis. 2d at 310 (recognizing that "denying a motion to amend a scheduling order" that will result in the dismissal of an action can amount to "gross unfairness" and that dismissal, as a sanction, is appropriate only if failure to obey a scheduling order is egregious and without excuse). They can be graduated to meet the circumstances and then increased when there is a further lack of compliance. They can be imposed against the attorney, the party, or both. *See* WIS. STAT. § 804.12(2)(b). But, above all, they must be "just." *See* § 804.12(2)(a).

### I. There must be a reasonable basis to impute complicity and responsibility to a party for their counsel's egregious conduct.

¶30    Both parties agree, as the circuit court found, that Scudder's original attorney failed to properly prosecute her claims, violated the scheduling order, failed to timely and fully respond to discovery requests, and thereby committed sanctionable conduct. They disagree as to who should shoulder blame for the conduct.

¶31    *Industrial Roofing* is our supreme court's landmark case[7] elucidating when and to what extent an attorney's egregious conduct should be imputed to a client. The court adopted the two-prong analysis first set forth in *Garfoot v. Fireman's Fund Insurance Co.*, 228 Wis. 2d 707, 728, 599 N.W.2d 411 (Ct. App. 1999), holding that "[w]hen an attorney's conduct is egregious 'the [circuit] court is to consider [1] the client's failure to act in a reasonable and prudent manner, *and* [2] the client's knowledge of or complicity in that conduct, in

---

[7] We note that *Industrial Roofing Services, Inc. v. Marquardt*, 2007 WI 19, 299 Wis. 2d 81, 726 N.W.2d 898, is not a true majority opinion in all holdings. The sections relied upon in this part of the opinion were authored by Justice Ann Walsh Bradley, joined by Justices Jon P. Wilcox and N. Patrick Crooks. Justice Louis B. Butler, Jr. concurred only in the mandate.

deciding whether to impute the attorney's conduct to the client for purposes of a sanction.'" *Industrial Roofing*, 299 Wis. 2d 81, ¶63 (emphasis added; quoting *Garfoot*, 228 Wis. 2d at 728); *see also* *State v. Smythe*, 225 Wis. 2d 456, 469 n.11, 592 N.W.2d 628 (1999) (whether a client acted prudently and whether a client knew of or was complicit in the attorney's conduct are significant considerations in deciding whether to impute that conduct). *Industrial Roofing* explains that "[e]ven if the record supports the view that the client … was not itself directly to blame for … failures, it does not follow that [the client] is without fault." 299 Wis. 2d 81, ¶64. The circuit court must take the next step and determine if fault may be laid at the client's feet because there was a "failure to act in a reasonable and prudent manner when [the client] knew or had reason to know that its attorney was failing to properly manage the case." *Id.*

¶32 Utilizing the *Garfoot* analysis, the *Industrial Roofing* court held that the circuit court did not erroneously exercise its discretion when it dismissed a complaint with prejudice after finding that the client failed to act in a reasonable and prudent manner (i.e., was not blameless); the client was aware of the attorney's conduct, so counsel's egregious conduct was correctly imputed to the client. 299 Wis. 2d 81, ¶80. As in the case before us, the attorney representing Industrial Roofing violated discovery rules and the circuit court's scheduling order. *See id.*, ¶¶7-26.

¶33 As always, the devil is in the details. Important to the *Industrial Roofing* court's affirmance of sanctions against the client—including the harsh sanction of dismissal—was the client's complicity and/or personal knowledge of ongoing compliance issues. *See id.*, ¶28. Industrial Roofing's founder and owner (Dippel) was at the scheduling conference where dates were set; he was indisputably aware of the deadlines in the case. *Id.*, ¶¶12-13, 28. He attended

numerous hearings, including the initial hearing on a motion to dismiss at which the circuit court expressed disappointment that Industrial Roofing's failure to file a response brief caused delay and said that it would address sanctions in further proceedings. *Id.*, ¶¶8-9. Dippel was also present at the hearing where monetary sanctions were imposed against his company. *Id.*, ¶12. Finally, Dippel knew about the incomplete discovery, and the evidence showed that he repeatedly asked his attorney about the status of Industrial Roofing's responses. *Id.*, ¶67.

¶34      In addition, the *Industrial Roofing* court emphasized that the circuit court in that case had moderated its sanctions against Industrial Roofing and selected graduated options; first, it ordered monetary sanctions, *id.*, ¶¶12, 21, and then—after warning that larger sanctions may be imposed if the misconduct continued, *id.*, ¶21—it dismissed the complaint without prejudice, *id.*, ¶35. Industrial Roofing was allowed to refile its case within sixty days if the monetary sanctions were paid to the defendants. *Id.* It was only after Industrial Roofing did not timely refile and did not pay the monetary sanctions that the court dismissed the case with prejudice. *Id.*, ¶38. A client "should have notice" that its case is teetering on the brink of dismissal and should not be blindsided by the "harsh sanction" of dismissal. *Id.*, ¶71; *see also* **Buchholz v. Schmidt**, 2024 WI App 47, ¶80, 413 Wis. 2d 308, 11 N.W.3d 212 (concluding a party had "ample notice" of possibility that his counterclaims would be dismissed for noncompliance with an oral ruling because he was present when the court issued the ruling).

¶35      *Industrial Roofing* thus sets out the standard upon which courts should evaluate whether an attorney's egregious conduct should be imputed to the client, holding that "it is an erroneous exercise of discretion for a circuit court to enter a sanction of dismissal with prejudice, imputing the attorney's conduct to the

client, where the client is blameless." 299 Wis. 2d 81, ¶61. The court articulated five "persuasive" reasons behind this standard:

> One, as a practical matter, a layperson ordinarily cannot be expected to supervise his or her attorney through every pretrial phase of litigation....
>
> Two, the consequence for the blameless litigant whose case is dismissed is extraordinarily severe. The litigant never gets the opportunity for a trial on the merits....
>
> Three, the harm to the opposing party is ordinarily limited, and the opposing party can be compensated.
>
> Four, the circuit court has other sanctions available to it short of dismissal of the litigant's case with prejudice, the most severe sanction possible. Sanctions could be imposed on the lawyer personally.
>
> Five, while a circuit court's efforts to move the docket expeditiously are important, dismissing actions for counsel's failure to comply with court orders does not necessarily foster sound, speedy administration of justice.

*Id.*, ¶62 (citation omitted; alterations in original).

¶36 When considering whether Dippel's knowledge or complicity was sufficient to warrant imputing his counsel's conduct to Industrial Roofing, our supreme court explained that Dippel's statements that his attorney ignored his inquiries about the status of late witness and expert lists and missing discovery over a three-month period, taken "*together* with Dippel's presence at the October and November hearings, provide a sufficient basis for the conclusion that Industrial [Roofing] failed to act in a reasonable and prudent manner." *Id.*, ¶68 (emphasis added). Thus, "Industrial [Roofing] knew or had reason to know that its attorney was failing to properly manage the case." *Id.*

¶37 Having established the standards to apply, we consider the facts and circumstances present in this appeal.

15

**II.** **The circuit court erroneously exercised its discretion in imputing Counsel's misconduct to Scudder and effectively dismissing her case.**

**A.** **The circuit court unreasonably concluded that Scudder knew or should have known of Counsel's misconduct and that she did not act reasonably and prudently.**

¶38    There are stark differences between Scudder's complicity and level of knowledge about her attorney's litigation failures and that of the client in *Industrial Roofing*.  To begin, she did not attend the scheduling conference and, as a first-time litigant who was not provided with the scheduling order, did not have personal knowledge of the deadlines in her case.  *See Hefty*, 312 Wis. 2d 530, ¶33 (stating that we generally uphold sanctions for violations of a scheduling order "when a scheduling conference has taken place at which *all interested parties* were present to be heard." (emphasis added)).  Nor did Scudder attend hearings at which the circuit court issued some sanctions and threatened further sanctions as the client did in *Industrial Roofing*.  There is no evidence in the Record that Scudder had any actual knowledge of missed deadlines or reason to know (let alone actual notice) that her case was teetering on the brink of being dismissed.

¶39    None of the three reasons cited by the circuit court for holding Scudder accountable for her original attorney's egregious missteps are supported by the evidence in the Record.  First, the court determined that Scudder "knew a witness list must be required" because she spoke with Counsel in January about witnesses.  But Scudder's affidavit stated that this January communication was initiated by her so she "could explain to [her] classmates what [was] needed for the case" and that Counsel "did not specifically request the names of witnesses at this time."  Based on this and Scudder's statement that she was unaware of court

16

deadlines, there is no evidence that Scudder knew or should have known that a witness list was required in January or that it was overdue.

¶40    Second, in discussing Scudder's April communications with Counsel, the circuit court determined that Scudder kept "her head in the sand" by merely offering to get a new attorney in April when "she should have said [she was] going to get a new attorney." This does not establish knowledge or complicity. Again, unlike the client in **Industrial Roofing**, Scudder had not attended any court hearings or the scheduling conference (because she was not aware of them) and did not know that any documents were missing or not timely filed. Her uncontroverted affidavit avers that she listened to her attorney—one experienced in the relevant area of law—and was assuaged by his confident statements that he had the matter under control.[8] There is no evidence to show that Scudder "kn[ew] something[ was] not going on quite right" in April, especially in view of the fact that Counsel told her in January that Concordia was dragging things out and causing delays. Nor does the Record contain sufficient evidence for the court to have reasonably concluded that Scudder was aware or should have been aware of Counsel's missteps in litigating her case such that she should have obtained new counsel.

¶41    Finally, the circuit court addressed the key timeframe and the real area of concern: the unanswered telephone calls from May to July. The court found that "this is way to[o] long" for a reasonable person to wait for an attorney to respond. To the extent the court applied a bright-line rule that after three

---

[8] Concordia also accepted Counsel's statements for months before realizing he was spouting empty promises. In fact, Concordia hesitated for two months (from March 21 through May 31, 2023) before seeking court intervention to compel discovery responses.

months without communication, a litigant is complicit in an attorney's egregious conduct, we disagree that such a rule is appropriate[9]; blameworthiness must be determined on a case-by-case basis. *See Industrial Roofing*, 299 Wis. 2d 81, ¶¶64-68 (upholding imputation of attorney misconduct to client based on specific facts concerning client's knowledge of misconduct and failure to act reasonably and prudently). *See also Charolais Breeding Ranches, Ltd. v. Wiegel*, 92 Wis. 2d 498, 514, 285 N.W.2d 720 (1979) (When "deciding whether to impute the negligence of the lawyer to the client, the [circuit] court must exercise its 'equitable powers to secure substantial justice between the parties.'" (citation omitted)). Moreover, simply recognizing an attorney is not taking a client's calls does not necessarily and automatically lead to a conclusion that he is also ignoring litigation obligations. It is reasonable to extend the first rationale identified in *Industrial Roofing* to acknowledge that a prudent layperson cannot be expected to recognize—without further incriminating facts—that a delay in communication is equivalent to a problem with the litigation.

---

[9] Contrast Scudder's three-month delay in taking action to the extensive delay in *Schneller v. Saint Mary's Hospital Medical Center*, 162 Wis. 2d 296, 312-13, 470 N.W.2d 873 (1991), where our supreme court upheld a circuit court's decision to preclude the naming of a liability expert witness even though it "would ultimately lead to the dismissal of their case." In that case, the circuit court explained that

> [a]lthough this Court is not only mindful, but also sympathetic to having parties "have their day in court," there does come a time when, after days have stretched to weeks, months *and years* with no basis for a claim asserted and it is effectually admitted that such a basis has not been found, when, after extention (sic) of time to find such a basis have been accepted and still no basis found and when, even after the final Court direction to an end date for factual presentations, the plaintiffs attempt to further add to the record, the Court must call a halt.

*Id.* (emphasis added).

18

¶42    The circuit court's concern that a first-time litigant cannot expect to "get a pass" and avoid her responsibility to properly and reasonably monitor her litigation is likewise unwarranted.  Scudder's actions show that she, in fact, acted reasonably and prudently as soon as she had reason to realize that, contrary to his assurances, Counsel had failed her and placed her litigation in significant jeopardy.  Her concern did grow in the months after her April conversations with Counsel, prompting her to seek advice from an attorney friend in June.  Four days after learning about CCAP and discovering the status of her case, she obtained hard copies of her case file and found out that *she* had been sanctioned.  Two days after that, she hired a new attorney and promptly filed for relief from the sanctions. This is not dilatory nonaction.  Scudder did not dither or sit on her hands.  She sought prompt judicial recourse.  There is simply nothing in the Record here to indicate that Scudder knew about, or was complicit in, her counsel's egregious conduct.

¶43    To summarize, Scudder had no notice that documents and discovery were missing.  The circuit court never inquired whether Scudder was aware of the failing course of her litigation.  The monetary sanction, with a set deadline for payment that the court imposed on Scudder, was never served on her.  There was no warning that further, harsher sanctions (including effectively dismissing her case) were likely.  There was merely a period of three months where Counsel was not returning her calls, which actually spurred Scudder to action.  Under the guidance of *Industrial Roofing*, we cannot conclude that a court could reasonably conclude that Scudder was sufficiently knowledgeable about, or complicit in, Counsel's misconduct to warrant effectively dismissing her case.  The dismissal of Scudder's case did not "foster sound, speedy administration of justice."  *See Industrial Roofing*, 299 Wis. 2d 81, ¶62 (citation omitted).  The circuit court

erroneously exercised its discretion by imposing the initial sanctions without conducting the *Garfoot* analysis, and then it compounded the error by not granting Scudder's motion for relief from sanctions.

> **B.**     **The circuit court applied an improper legal standard in imposing a sanction that effectively dismissed Scudder's case.**

¶44     "Because dismissal of a complaint terminates the litigation without regard to the merits of the claim[s], dismissal is an extremely drastic penalty that should be imposed only where such harsh measures are necessary." *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 542, 535 N.W.2d 65 (Ct. App. 1995). Accordingly, that sanction is "appropriate only in limited circumstances." *Industrial Roofing*, 299 Wis. 2d 81, ¶42. Pursuant to *Garfoot*, 228 Wis. 2d at 719, a circuit court should consider whether a "failure to comply with circuit court scheduling and discovery orders [is] without clear and justifiable excuse." If so, it is egregious conduct. *Id.*; *see also Smythe*, 225 Wis. 2d at 469 n.11 (holding that an attorney's conduct "may be imputed to a client if the client failed to act as a reasonable and prudent person in engaging an attorney of good reputation, failed to rely upon the attorney to protect his or her rights, and failed to make a reasonable inquiry concerning the proceedings").

¶45     Dismissals (or de facto dismissals) are not the only available option in a circuit court's arsenal when faced with egregious conduct by an attorney. "Because dismissal is an 'extremely drastic penalty,' circuit courts must use their authority with restraint and should consider whether there are less severe sanctions that would adequately deter and punish the misconduct." *Schultz*, 248 Wis. 2d 746, ¶19 (citation omitted). The legislature has provided circuit courts with various options, ranging from warnings to monetary penalties to prohibiting a line

of inquiry at trial to excluding a certain witness or expert to dismissal of the case. WIS. STAT. § 805.03. All of these sanctions, however, must be "just." *Id.*

¶46 At oral argument on Scudder's motion for relief, the circuit court stated that it did "not dismiss" the complaint as a sanction, thereby sidestepping the requirement that it consider whether there was a clear and justifiable excuse for the conduct, whether alternatives should have been considered, and whether the harsh sanction was appropriate. *See Brandon Apparel Grp.*, 247 Wis. 2d 521, ¶11; WIS. STAT. § 804.12(2)(a). Even Concordia[10] (which only sought an order prohibiting the introduction of damages evidence and not a bar on the calling of witnesses) proposed an order requiring Scudder to file and serve the witness list and complete discovery responses as soon as possible.

¶47 Instead of inquiring whether Scudder was personally knowledgeable about or complicit in Counsel's conduct, as required under *Garfoot*, and instead of issuing a warning and requiring that Scudder be notified of the status of inactivity on her case and given an opportunity to address the court, and instead of imposing an alternate sanction as requested by Concordia and instructing that Scudder be served personally with the sanction—all steps, coincidently, the court in *Industrial Roofing* undertook—the court here simply imposed a sanction that effectively eviscerated Scudder's case. Even if Counsel's egregious misconduct could be imputed to Scudder, the circuit court jumped over other possible sanctions and alighted on the most draconian: by prohibiting Scudder from presenting any evidence on damages and calling any witnesses, it effectively dismissed her

___

[10] Concordia acknowledged the same in its oral argument at the hearing, contending there was "no need to delay the inevitable" because Scudder had "no credible evidence to prove damages."

complaint with prejudice. The circuit court also issued an order requiring a prompt payment of a monetary penalty but took no steps to see that Scudder was aware of the order against her, the amount due, or the time by which it had to be paid. These are not "just" sanctions, nor were they initiated in a just fashion.

¶48 This was a dismissal sanction, and the appropriate standard should have been followed by the circuit court. A court may not avoid the higher burdens before issuing a dismissal by doing everything but saying it is a dismissal.

**CONCLUSION**

¶49 As set forth in ***Industrial Roofing***, 299 Wis. 2d 81, ¶63, while a circuit court may dismiss a civil action as a sanction for egregious conduct, the court must first consider the two prongs set out in ***Garfoot*** and find that (1) the client failed to act in a reasonable and prudent manner in monitoring her attorney's conduct in the litigation and (2) the client had knowledge of, should have known, or was complicit in the attorney's egregious conduct. This is especially true when the attorney is misleading the client.

¶50 Scudder was unaware of Counsel's abject failure to prosecute her case because Counsel misled her by withholding pertinent information and convincing her that delays were due to the opposing party. The conclusion that Scudder was at fault for failing to act in a reasonable and prudent manner was not one that a reasonable judge could make.

¶51 We conclude that the circuit court erroneously exercised its discretion by both unreasonably concluding that Scudder was complicit in her Counsel's misconduct and by applying an improper legal standard in imposing the sanctions unjustly. Accordingly, its judgment memorializing the order denying

22

Scudder's motion for relief from sanctions (and to amend the scheduling order) and granting Concordia's motion for summary judgment is reversed. We vacate the judgment, reverse the sanctions order and remand the matter to the circuit court to amend the scheduling order and permit Scudder to resume her case on the merits and for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with instructions.

Recommended for publication in the official reports.